2001 OK CR 4

**Bruce Allen NELSON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–99–1543.

Court of Criminal Appeals of Oklahoma.

March 8, 2001.

Don J. Gutteridge, Jr., Oklahoma City, OK, Counsel for Appellant at trial.

Sue Taylor, Assistant District Attorney, Stephens County Courthouse, Duncan, OK, Counsel for the State at trial.

Lisbeth L. McCarty, Norman, OK, Counsel for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Sandra D. Howard, Assistant Attorney General, Chief, Criminal Appeals Oklahoma City, OK, Counsel for the State on appeal.

## *OPINION*

LUMPKIN, PRESIDING JUDGE:

¶1 Appellant, Bruce Allen Nelson, was tried in a non-jury trial before the Honorable George W. Lindley, District Judge, District Court of Stephens County, Case No. CF–96–56 and CF–96–59, and convicted of Shooting a Firearm with Intent to Kill, in violation of 21 O.S.Supp.1992, § 652(A), and Feloniously Pointing a Firearm, in violation of 21 O.S. 1991, § 1289.16. He was sentenced to life imprisonment on the shooting with intent to kill charge and ten (10) years imprisonment on the pointing a firearm charge. The trial judge ordered the sentences to run consecutively. Appellant now appeals his convictions and sentences.

¶2 Appellant graduated from Duncan High, then spent one year at Oklahoma State University. He reportedly dropped out due to "financial limitations." Appellant worked at Halliburton for six years.[1]

¶3 At the age of thirty, the record indicates Appellant was shot in the head three times.[2] The details or severity of that shooting are not provided. For the next seven years, Appellant remained unemployed.

¶4 The record indicates Appellant has a "history of receiving psychiatric treatment."[3] Prior to committing the crimes charged, Appellant had been treated for substance abuse problems at Western State Hospital and "services" at Jim Taliaferro Community Mental Health Center. It is unclear what role Appellant's head injury played in his later psychiatric treatments, because the record does not state exactly when Appellant's psychiatric problems began. However, the record indicates his head injury was a "possible etiological factor in the development of his mental illness," and Appellant's substance abuse was excessive during the year prior to his arrest for the crimes charged in this case.[4] The record suggests, therefore, that Appellant's problems developed after he was shot in the head, and his psychological state was becoming increasingly problematic in the year prior to this incident.

¶5 On February 19, 1996, at least three people saw Appellant carrying a gun through his Duncan neighborhood. Appellant pointed the gun at his neighbor, Michael Culberson. He then lowered the gun and pointed it at the house next to Culberson's. He again

---

1. (O.R. at 28.) All citations to the record are from case number CF–96–56.

2. (O.R. at 28.)

3. (O.R. at 28.)

4. (O.R. at 27.)

lowered the gun and entered his own house. Culberson called the police.[5]

¶ 6 At least six police officers responded to the call of a man with a gun in a neighborhood. As they arrived, Culberson told the officers about the situation. Officers Westbrook and Lang approached the house and were greeted by loud rock and roll music. They knocked on the front door but nobody answered.

¶ 7 As Officer Westbrook used a P.A. system to order Appellant out of the house, Officer Lang made the decision to attempt to enter the house through the rear door. (The officers did not know if anyone else was inside the home.) Lang kicked in the back door and squeezed through. He found he was on an enclosed porch, and the actual back door still had to be penetrated. At this point, Lang saw a figure approaching the back door. Lang yelled, "[P]olice officer, get on the floor." The subject obeyed. Seconds later the back door opened, and Lang was shot five times. Appellant fired first, but Lang returned eleven rounds. Lang's life was saved because he was wearing body armor. Nevertheless, Lang was hit several times. Appellant finally surrendered his gun to police and was taken into custody.

¶ 8 After Appellant was arrested and an information was filed, Appellant's attorney filed an application for competency evaluation, claiming Appellant "exhibits signs of a lack of sufficient competency to understand and appreciate the nature of the charges against him and to effectively assist his counsel in defense of his case."[6] A hearing was held on the application on March 29, 1996. Gordon Wilson, a psychologist for Taliaferro Community Mental Health Center testified

that Appellant is "very delusional." He believes the United States government has a conspiracy to wrongfully imprison him and that ... they have got some kind of toxic poison that they are poisoning him with.[7] Wilson testified Appellant was "not rational" and that the things Appellant told him were "bizarre" and "not logical."[8] Wilson testified that, in his opinion, Appellant was suffering from schizophrenia. Appellant had a history of treatment for this condition and was suffering from hallucinations. Wilson believed this condition had been going on for a long time.[9]

¶ 9 Shortly thereafter, the trial court entered an order stating Appellant "is not presently able to effectively and rationally assist in his defense as a result of his incompetence, and is not capable of achieving competency within a reasonable period of time, and is a mentally ill person requiring treatment" under Oklahoma's statutes.[10]

¶ 10 On January 14, 1997, Curtis D. Grundy, Eastern State Hospital's Forensic Psychologist, provided a letter to the district court advising that Appellant remained incompetent to stand trial. While Appellant had an ability to appreciate the charges against him, his ability to rationally assist his counsel remained questionable. Appellant had spoken to Grundy about subpoenaing "capital federal capital investigators," "respectable, not objectionable extra defense witnesses," and "finding the hidden microphones." He also believed his behavior was controlled by a computer and satellites.[11] Appellant had delusions of persecution and grandiosity.[12] He was diagnosed as having a "severe persistent mental illness" and that he should be considered a potential threat to

---

5. During the preliminary hearing, Culberson testified that he heard two shots, so he walked around to the back of his house. He saw Appellant fire a gunshot into the ground. Appellant then pointed the gun at him and smiled. (P.H.Tr. at 6.) He also pointed the gun at Cecil Wyatt, Jr. and his wife. Wyatt saw Appellant fire the gun twice into the air. Wyatt yelled over and asked Appellant if he had lost his mind. Appellant then pointed the gun at him. (P.H.Tr. at 17.) Wyatt thought Appellant looked as if he was not in control of his faculties. (P.H.Tr. at 24.) Wyatt did not show up for trial, so a second count of pointing a firearm was dismissed.

6. (O.R. at 9.)

7. (3–29–96 Tr. at 5.)

8. (3–29–96 Tr. at 6.)

9. (3–29–96 Tr. at 7.)

10. (O.R. at 10.)

11. (O.R. at 25.)

12. (O.R. at 18.)

himself and others if released.[13] Following this report, the Court again, on February 26, 1997, adjudged Appellant to be incompetent.

¶ 11 One year later, February 19, 1998, Grundy gave another report indicating Appellant had achieved competency as a result of drug therapy. Appellant's delusions and hallucinations had stopped, and he now recognized his prior beliefs were false. Grundy reported a clinically significant change with a stable return of reality-based thinking.[14] Appellant was able to understand the charges against him, discuss his legal predicament, and assist in his own defense. Significantly, Grundy reported, "He is capable of describing the pleas which are available to him, including the concepts of guilty, not guilty, no contest, and not guilty by reason of insanity."[15] However, Appellant still had a "severe and persistent mental illness which requires continued treatment."[16] He was diagnosed as a paranoid schizophrenic who should remain on medication. (He has a history of medication noncompliance.)

¶ 12 On March 3, 1998, following the filing of this report, the trial court again found Appellant incompetent to stand trial.[17] However, the next year, a May 11, 1999 follow-up report by Kathryn LaFortune, another forensic psychologist, determined Appellant was now competent to stand trial. The trial court entered an order adjudging Appellant competent to stand trial on May 24, 1999.[18]

¶ 13 After his preliminary hearing in June, 1999, Appellant was bound over for trial. He then pled not guilty by reason of insanity.[19]

¶ 14 Appellant waived jury trial. As his non-jury trial began, October 6, 1999, Appellant's attorney stated, "I understand that the Record might reflect that Mr. Nelson pled not guilty by reason of insanity. If in fact that's the case, he wants to withdraw that plea and just plead not guilty."[20] Appel-

lant's counsel then indicated Appellant "was concerned and I did want to make sure for the Record it's cleared up that his plea is just straight not guilty."[21] The trial judge indicated, "Judge Enos took the not guilty, and it was not guilty by reason of insanity, but you're indicating that you're withdrawing that?" Appellant's counsel stated, "We are withdrawing ... the plea of not guilty by reason of insanity." The trial judge agreed to this request.

¶ 15 Accordingly, no evidence of Appellant's insanity was presented at the non-jury trial. However, at the time of sentencing, Appellant's counsel argued, "I think it is pretty apparent that Mr.-that Mr. Nelson, at least at the time of the offense and certainly thereafter had had some-some severe mental problems. I think that that was a contributing cause to what transpired on that particular date. We would just ask the Court to take some of these things into consideration whenever it imposes a sentence...."[22]

■ ¶ 16 In his first proposition, Appellant claims error occurred when the same judge improperly presided over both the preliminary hearing and the trial, without Appellant ever being asked to waive the two-judge rule. Appellant claims this was a violation of 22 O.S.1991, § 576 and this Court's holding in *Doss v. State*, 1992 OK CR 15, ¶ 7, 829 P.2d 45, 46.

¶ 17 Section 576 of Title 22 provides, "The judge who conducts the preliminary examination shall not try the case except with the consent of all parties." Using this statutory provision, Appellant relies on the following language from *Doss:*

> Since section 576 requires the consent of all parties, in all future cases, the trial court should inform the defendant of his statutory right and secure a response on the record. Accordingly, we are required

---

13. (O.R. at 19.)

14. (O.R. at 25–26.)

15. (O.R. at 26.)

16. (O.R. at 27.)

17. (O.R. at 34–37.)

18. (O.R. at 39, 51.)

19. (O.R. at 85, Tr. at 6.)

20. (Tr. at 5.)

21. (Tr. at 6.)

22. (Tr. at 88.)

to REVERSE and REMAND this case for a NEW TRIAL.

Appellant claims this language requires this Court to reverse his conviction.[23]

¶ 18 The record reflects that just as Appellant's non-jury trial was about to begin, the prosecutor stated, "Are they going to waive the—are you going to waive the two judge rule because I believe Judge Lindley did the prelim." [24] Appellant's counsel responded, "Yes." The trial court then advised, "If he proceeds he waives." Appellant's counsel then instructed the Court to "proceed." The case then moved forward.

¶ 19 The State argues this issue is controlled by *Jordan v. State,* 1988 OK CR 227, ¶ 5, 763 P.2d 130, 131, which considered "whether there is record evidence to support that all parties consented." The conviction in *Jordan* was reversed because the record was completely silent on this issue, i.e., neither Appellant nor his counsel waived the two judge rule on the record, and thus this Court found the statute requires an "affirmative expression of consent." [25]

¶ 20 Here, the record contains an affirmative expression of consent. The trial judge told Appellant and his counsel that if "he" proceeded the issue was waived. Appellant's counsel told the judge to proceed, and Appellant said nothing. The judge's statement required a response, and Appellant's actions were as much an expression of consent as his words would be.

¶ 21 Under the evidence code, a statement, for purpose of the hearsay rule, is defined as including "nonverbal conduct of a person, if it is intended by him as an assertion." 12 O.S.1991, § 2801(1)(b). Similarly, Appellant's action of "proceeding" was an intended assertion.

¶ 22 In accordance with *Doss,* Appellant was "informed of his statutory right," i.e., he was advised of his right to another judge because Judge Lindley had presided over the preliminary hearing.[26] A response was secured on the record, both from Appellant's trial counsel and Appellant himself through his nonverbal assertion. On the record before us, this was a sufficient response.

■ ¶ 23 By analogy, we have held an express statement, oral or written, is not required for a defendant to expressly waive his *Miranda* rights. *See Gilbert v. State,* 1997 OK CR 71, ¶ 36, 951 P.2d 98, 110. When a defendant makes an incriminating statement after having been advised of his rights, his actions constitute an express waiver. The same principle holds true here.

¶ 24 In his second proposition of error, Appellant claims his defense counsel was ineffective for failing to pursue an insanity defense. He correctly points out the available evidence supported a not guilty by reason of insanity defense. He claims "[h]ad an insanity defense been pursued, no rational trier of fact could have concluded that Mr. Nelson was sane at the time of the shooting." The State, on the other hand, contends "this claim is incredulous since the record indicates that the defendant himself chose to withdraw his plea of guilty by reason of insanity and enter a plea of not guilty." Furthermore, the State points out that, under Rule 1.2(a) of the Rules of Professional Conduct, codified at 5 O.S.1991, ch.1, app. 3–A, a criminal defense lawyer "shall abide by the client's decisions, after consultation with the lawyer, as to a plea to be entered." The State also contends this decision was a matter of trial strategy, and this Court refuses to second guess trial strategy on appeal. *Short*

---

23.   I dissented in *Doss,* in part, on the basis that the defendant had waived his statutory right under section 576 by failing to raise the issue at trial.

24.   (Tr. at 6.)

25.   Judge Bussey dissented, finding "implied consent" in the fact that the parties announced ready for trial and never objected under section 576. *Jordan,* 1988 OK CR 227, ¶ 3, 763 P.2d at 131. (J. Bussey, dissenting).

26.   Furthermore, *Doss* is factually distinguishable from this case. In *Doss,* the record contained no evidence regarding waiver of the two-judge rule. This Court remanded the matter for an evidentiary hearing, which resulted in the attorney saying he had counseled his client regarding the matter and the defendant denying any consultation had occurred.

*v. State,* 1999 OK CR 15, ¶ 87, 980 P.2d 1081, 1107.

¶ 25 A review of the facts indicates Appellant's best, and most plausible, defense to the crimes charged was insanity. The psychological evidence used in adjudging Appellant incompetent to stand trial for over three years indicates Appellant was acting in an extremely delusional and paranoid manner in the weeks following the crime. He was diagnosed with a severe and persistent mental illness-schizophrenia-that requires continuous medication to control.

¶ 26 However, Appellant, through drug intervention, was able to gain competency to stand trial. Having regained competency and having demonstrated to his doctor an understanding of the nature of the not guilty by reason of insanity defense, Appellant made the decision to waive the insanity defense. His trial attorney then communicated Appellant's desire to the judge.

¶ 27 The question is whether Appellant's counsel was ineffective for not pursuing the insanity defense despite the fact that he was instructed by his competent client to waive the defense, which appeared to be the only valid defense to the crimes charged. Our research on this issue indicates Appellant's counsel should not be considered ineffective.

¶ 28 Appellant's counsel apparently recognized at the outset that insanity was a viable defense because his client initially pled not guilty by reason of insanity. Furthermore, even after Appellant made the decision to amend his plea, Appellant's counsel argued the point during sentencing, claiming it "is pretty apparent ... Mr. Nelson, at least at the time of the offense and certainly thereafter had had some-some severe mental problems." Appellant's counsel then argued the mental problems were "a contributing cause to what transpired on that particular date" and asked the trial judge to consider this in his sentencing decision.

¶ 29 However, Appellant's counsel was ethically bound to accept his competent client's decision regarding the plea to be entered. This is clear from Rule 1.2(a) of the Rules of Professional Conduct. Indeed, the committee comments to Rule 1.2 note "[t]he client has ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law...."

¶ 30 We have found no cases directly on point in Oklahoma, and none are cited by the appellate attorneys. However, in *Alvord v. Wainwright,* 469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984), the Supreme Court declined to grant certiorari with respect to a nearly identical issue. Two justices, Marshall and Brennan, dissented to that decision and filed an opinion.

¶ 31 According to the dissent, defendant Alvord had a long history of mental illness; he had even been found not guilty by reason of insanity in a previous trial. Nevertheless, the defendant's appointed counsel accepted his client's initial refusal to rely on the insanity defense, failed to conduct any investigation into the insanity defense, and relied instead on an implausible alibi defense. The Eleventh Circuit Court of Appeals affirmed the District Court's decision that counsel was ethically bound to follow his competent client's wishes. *See Alvord v. Wainwright,* 725 F.2d 1282, 1289 (11th Cir.1984).

¶ 32 In his dissenting opinion, Justice Marshall argued the question was not whether counsel had a duty to override his client's wishes or pursue fruitless investigation, but whether counsel had a duty to investigate the defense and make a minimal effort to persuade his client to follow the only plausible defense. *Alvord,* 469 U.S. at 959, 105 S.Ct. at 357. Marshall stated his primary concern as follows: "[I]f pursuit of an insanity defense is a decision to be made by the accused, it must be done on the advice of a well-informed attorney who has assured that his client has based his decision on relevant information." *Id.* at 960, 105 S.Ct. at 358.

¶ 33 Marshall's concerns are well-taken. However, unlike *Alvord,* in the instant case there is no indication, nor allegation, that Appellant's counsel failed to counsel Appellant regarding this matter. For all we know, defense counsel may have carefully advised Appellant to pursue an insanity defense, but Appellant still declined. Indeed, the psychologist's reports indicate Appellant had shown

an understanding of the nature of the insanity defense.

¶ 34 In *State v. Tenace,* 121 Ohio App.3d 702, 700 N.E.2d 899 (1997), an Ohio appellate court analyzed this issue extensively. In addition to citations to Ohio's ethical rules and to *Alvord,* the appellate court reviewed: *State v. Turner, Medina* App. No. 963 (Ohio Ct.App. Sept. 17, 1980) (unreported Ohio appellate decision finding an attorney's duty is to present the available plea choices, explain their meanings, and then abide by his client's choices); *State v. Smith,* 3 Ohio App.3d 115, 444 N.E.2d 85, 91 (1981) (holding the trial court acted correctly in accepting a withdrawal of a not guilty by reason of insanity plea without discussing the matter with the defendant, "at least when the record discloses no dissension from that decision by the defendant"); *Weber v. Israel,* 730 F.2d 499, 508 (7th Cir.1984) (upholding a trial attorney's "tactical" decision to withdraw an insanity plea where a defendant "gave absolutely no indication that he disagreed with the withdrawal"); *State v. Fayle,* 134 Ariz. 565, 658 P.2d 218, 229 (1982) (holding "if a defendant has acted intelligently and voluntarily, a trial court must defer to his or her decision to waive the insanity defense"); and *People v. Medina,* 51 Cal.3d 870, 274 Cal. Rptr. 849, 799 P.2d 1282, 1301 (1990) (in which the Supreme Court of California held the decision whether or not to plead not guilty by reason of insanity is personal to the defendant and the trial court has no discretion to deny a defendant's motion to reinstate his insanity plea solely because counsel opposed that choice on tactical grounds).

¶ 35 After reviewing these decisions, the Court in *Tenace* held, "once appellant was found competent to stand trial, he was also competent to make a decision regarding what plea to enter. Even if his trial counsel believed that appellant's choice was not the best tactical choice, appellant's decision should have been final."

¶ 36 These decisions collectively indicate to this Court that the decision to choose a plea is personal to the defendant.

Unless there is some clear indication the defendant's trial counsel failed to properly advise him or adequately explain the consequences of that decision, the trial attorney is not ineffective in failing to abide by his competent client's wishes, even where questionable.[27] Indeed, he acts in a professionally unethical manner if he does not follow those directions in entering a plea. Therefore, Appellant has failed to show any errors by counsel which were so serious as to deprive Appellant of a fair trial, a trial whose result is reliable. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). This proposition of error fails.

¶ 37 In his third proposition of error, Appellant claims the evidence is insufficient to prove he shot Officer Lang with an intent to kill. This proposition is without merit. Appellant shot Lang five times from close range. Had Lang not been wearing body armor, two shots would likely have proven fatal. When viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State,* 709 P.2d 202, 203–204 (Okl.Cr.1985).

¶ 38 In his fourth and final proposition of error, Appellant claims his sentences are excessive. He points out that he has a history of mental illness, not a history of committing crimes. He also points out the State could have charged him with misdemeanor pointing a weapon instead of feloniously pointing a weapon.

¶ 39 Appellant received the maximum sentence on each of his two convictions, and they were they ordered to run consecutively. At the time of this incident, shooting a firearm with intent to kill carried a sentence of up to life, and feloniously pointing a firearm carried a sentence of one to ten years.

¶ 40 This proposition presents an interesting issue. This was a non-jury, non-bifurcated trial. Appellant did not present any evi-

---

27. It appears Appellant decided he would rather serve his time with the Department of Correc-tions rather than a mental hospital. (Tr. at 88.)

dence of his mental illness at trial. There is plenty of evidence to support such a claim in the record, however, and the judge was asked to consider Appellant's mental state at the time of sentencing.[28]

¶ 41 According to 22 O.S.1991, § 973:

After a plea or verdict of guilty in a case where the extent of the punishment is left with the court, the court, upon the suggestion of either party that there are circumstances which may be properly taken into view, either in aggravation or mitigation of the punishment, may in its discretion hear the same summarily at a specified time and upon such notice to the adverse party as it may direct.

This statute clearly allows the trial court to consider matters of mitigation in deciding upon the appropriate sentence.

¶ 42 In this case, we have a defendant with no prior criminal history, a serious head injury, and strong evidence of contemporaneous mental illness shooting a police officer five times at close range as the police officer broke into the defendant's home. We cannot downplay the serious nature of this crime. On the other hand, Appellant's mental illness is a compelling mitigating factor.

¶ 43 Given the unique nature of this case, this Court finds it appropriate to modify Appellant's sentence in case number CF–96–56 to thirty years and to run Appellant's sentence in CF–96–56 concurrently with Appellant's ten (10) year sentence in case number CF–96–59.

### DECISION

¶ 44 Appellant's convictions are hereby **AFFIRMED**. Appellant's sentence in case number CF–96–56 is hereby **MODIFIED** to thirty (30) years, and both case numbers CF–96–56 and CF–96–59 are **MODIFIED** to be served concurrently with one another.

---

**28.** This particular judge did not preside over any of Appellant's competency hearings or sign any of the competency orders. There is no concrete evidence he reviewed any of it, although it is possible that he did.

**1.** 22 O.S.Supp.2000, § 1175.1. During a court-ordered competency evaluation, a doctor must examine the defendant to determine (a) whether the defendant can appreciate the nature of the

JOHNSON, V.P.J., concur.

CHAPEL and STRUBHAR, JJ., dissent.

LILE, J., concur.

### CHAPEL, J., DISSENTING:

¶ 1 I find merit in Proposition II. Nelson had long-standing mental problems, with a diagnosis of paranoid schizophrenia. As is common among people with that disease, he often refused to take medication that would control his illness. He was originally found incompetent to stand trial and his "severe persistent mental illness" delayed a finding of competency for a year. After a brief return to competency, he was found incompetent and treated for over a year again before he was adjudged competent to stand trial. Finally, he had a non-jury trial in which he insisted on pleading not guilty, and refused to claim insanity despite his evident mental illness. Nelson now claims his trial attorney was ineffective for failing to pursue an insanity defense. The majority admits Nelson's best defense was insanity, which was amply supported by the evidence. However, the majority holds that, since Nelson was competent to stand trial, he was competent to instruct his attorney to waive the insanity defense. Therefore, the majority finds counsel could not be ineffective for following his client's express wish regarding his plea. I disagree.

¶ 2 I do not disagree with the majority's conclusion that counsel would be ethically bound to accept a competent client's decision regarding the plea to be entered. The issue is whether Nelson was competent to make that decision. Our standard for competency to stand trial is minimal: can a defendant understand and appreciate the nature of the charges against him and rationally and effectively assist his counsel in his defense.[1] As

charges; or (b) whether he can consult with his attorney and rationally assist in preparation of his defense; (c) if the answer to (a) or (b) is no, whether the defendant, if treated, can attain competency within a reasonable time; (d) if the defendant is mentally ill or requires treatment as defined by law; and (e) whether the defendant would pose a significant threat to the life or safety of others if released without treatment. 22 O.S.Supp.2000, § 1175.3.

happened here, persons with severe and long-standing mental illness are routinely found competent to stand trial, usually after prolonged drug therapy. This is because, after treatment, they can recognize and repeat what they are charged with, what could happen to them, and what happens in a courtroom, and can speak reasonably to an attorney. If a defendant can accomplish these things he will be adjudged competent even if he continues to suffer from a serious mental disorder.

¶ 3 Our criminal justice system continues to see more and more defendants with a variety of serious mental illnesses. Indeed, it appears that our prisons are being inundated with people who only a few years ago would be residing in state institutions for the mentally ill and retarded which have been closed. Often these people have either received no treatment or have refused treatment, due to their mental condition, before committing crimes. After being charged with a crime, they may be treated until they can stand trial-that is, they can meet the low threshold for competency. Most, like Nelson, can only meet that threshold while on medication, which they often refuse to take unless hospitalized. These drugs are often given in doses so strong that people without mental problems cannot take them; they tend to have serious and, sometimes, bizarre side effects. I am not prepared to join in a decision that would allow, indeed require, a person who meets the low threshold of competency to stand trial, but who is otherwise mentally incompetent to carry on his affairs, to make critical legal decisions over the objection of counsel.

¶ 4 I recognize that other courts and the majority disagree. The majority relies in part on *State v. Tenace*[2] and cases discussed therein. I note that none of these cases addresses my concern-is a mentally ill defendant, found competent to stand trial, actually competent to make important decisions regarding his defense. Rather, these cases, like the majority, assume the answer is "yes". Similarly, the reliance on professional ethical standards does not address my question; those standards require an attorney to con-

sult, and in some circumstances, to defer to a defendant *who is presumed able to make rational decisions.* In my view any discussion of whether a mentally ill but competent defendant may have good reasons for avoiding an insanity defense miss the point. In other areas of life we would not assume the mentally ill person was making decisions on a rational basis. Why should we do so here, where the consequence are so grave?

¶ 5 I believe it is time for us to reconsider our treatment of mentally ill defendants. Nelson may have been found competent to stand trial, but he was clearly mentally ill. Nothing in the record persuades me he had the ability to make reasonable, much less rational, choices regarding his case. Nelson had originally pleaded not guilty by reason of insanity, but retracted that plea once he was medicated enough to understand the proceedings. I am not persuaded this was a rational, intelligent or voluntary choice. Courts must not merely abide by the letter of the law, but must give life to its spirit. It is wrong to hold a trial for someone who cannot understand the charges or assist in his defense. It is also wrong to force or allow a person with a severe mental illness who may be competent to stand trial to make and abide by important decisions concerning his case. The Sixth Amendment right to effective counsel is a fundamental right underlying our entire criminal justice system. It violates both the spirit and the letter of the Constitution to deprive mentally ill defendants of the advice of effective counsel, and require counsel to abide by irrational client decisions, merely because the client knows where he is and what is happening to him in the courtroom. I conclude defense counsel was not bound by Nelson's decision, and would find counsel ineffective for failing to pursue an insanity defense.

¶ 6 I am authorized to state that Judge Strubhar joins in this dissent.

---

2. 121 Ohio App.3d 702, 700 N.E.2d 899 (1997).