**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 19, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

LEON L. CRAWLEY,

      Petitioner - Appellant,

v.

WALTER DINWIDDIE,

      Respondent - Appellee.

No. 05-5087

**ORDER**

Before **O'BRIEN, EBEL** and **TYMKOVICH**, Circuit Judges.

The panel has decided, *sua sponte*, to withdraw the opinion issued on July 22, 2008, and replace it with the attached, revised opinion. While Crawley's petition for panel rehearing was pending, the Supreme Court decided *Knowles v. Mirzayance*, -- U.S. --, 129 S. Ct. 1411 (2009), which the revised opinion follows. Crawley's petition for panel rehearing is denied. Crawley's petition for rehearing en banc was transmitted to all of the judges of the court who are in regular active service as required by Rule 35 of the Federal Rules of Appellate Procedure. No poll was requested; Crawley's petition for rehearing en banc is denied.

The attached opinion is hereby substituted for the one issued on July 22, 2008.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

July 22, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LEON L. CRAWLEY,

      Petitioner - Appellant,

v.

No. 05-5087

WALTER DINWIDDIE,

      Respondent - Appellee.

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 04-CV39-EA)**

Howard A. Pincus, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the briefs) Denver, Colorado, for Petitioner - Appellant.

Donald D. Self, Assistant Attorney General (W.A. Drew Edmondson, Attorney General of Oklahoma, with him on the briefs) Oklahoma City, Oklahoma, for Respondent - Appellee.

Before **O'BRIEN, EBEL** and **TYMKOVICH**, Circuit Judges.

**O'BRIEN**, Circuit Judge.

      The Oklahoma Court of Criminal Appeals (OCCA) rejected Leon L. Crawley's

claim of ineffective assistance of counsel, concluding his attorney did not perform

deficiently at Crawley's competency hearing by abiding Crawley's wishes and arguing he was competent to stand trial despite contrary medical opinion. The district court denied Crawley's habeas petition. Because the OCCA's resolution of Crawley's claim is not "contrary to or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), we affirm.

## I. Background

Crawley was charged in Oklahoma state court with possession of a stolen vehicle after former conviction of two or more felonies and driving with a suspended license. Though he faced more than twenty years in prison, Crawley rejected the State's offer of six years incarceration in exchange for a guilty plea and insisted on going to trial. Dissatisfied with his first court-appointed counsel, Crawley filed a pro se motion for different counsel. Before the court could consider the motion, appointed counsel left the public defender's office and Crawley's case was reassigned to Assistant Public Defender Greg Graves.

Graves requested Crawley undergo a competency determination, fearing his "obsession with matters not relevant to his defense" was interfering with his ability to communicate with counsel. (R. Doc. 5, Ex. A at 5 (quotations omitted)). The court appointed Dr. William Cooper to examine Crawley. Dr. Cooper concluded Crawley was able to appreciate the nature of the charges against him but was incompetent to stand trial because he was unable to consult with his attorney and rationally assist in the preparation

of his defense.  Crawley was not satisfied with Dr. Cooper's conclusions; he believed he was competent and welcomed a trial.  The issue of Crawley's competence was put to a jury, where – in an odd reversal of roles – the government argued Crawley was incompetent and Graves, suppressing his misgivings, argued the opposite.[1]

At the competency hearing, the government called Dr. Cooper, who testified Crawley was incompetent.  Without making a formal diagnosis, Dr. Cooper stated Crawley was "somewhat guarded and suspicious," was unable to organize his thoughts in "a coherent, cohesive manner," heard voices, believed "God had been speaking to him," and exhibited "paranoid thinking."  (R. Doc. 6 at 44-45.)  The State also called Crawley, who testified to his understanding of the criminal proceedings and explained to  the jury that he was, in fact, competent to stand trial and wanted to do so.  Both Cooper and Crawley were subject to cross examination.  Graves called no witnesses on Crawley's behalf, but did argue, contrary to the State's position and in spite of Dr. Cooper's opinion, that the evidence supported a finding of competency.[2]  So the evidence came down to Dr.

---

[1] Outside the presence of the jury, Graves informed the court he had advised Crawley to accept Dr. Cooper's opinion, but decided to abide Crawley's desire to be found competent and so advocated for that result.

[2] The court instructed the jury on three occasions that the arguments of counsel were not evidence and should not be considered as such.  *See* R. Doc. 6 at 33 ("It is the responsibility of the attorneys to present evidence, to examine and cross-examine witnesses and to argue the evidence.  No statement or argument of the attorneys is evidence."); *id.* at 34 ("As I've told you before[,] the statements, remarks and arguments of the attorneys are intended to help you to understand the evidence and apply the law, but they are not evidence.  If any statement, remark or argument of an attorney has no basis in the evidence, then you should disregard it."); *id.* at 36 ("[B]oth counsel will be entitled to give you closing arguments.  Again, this is not evidence to be used by you.  It

-3-

Cooper's opinion, which he explained to the jury,[3] and Crawley's testimony, insisting he was competent. Crawley demonstrated a knowledge of the pending charges and the possible punishments. He was able to explain motion practice and his dissatisfaction with his prior attorney, who missed deadlines. He told the jury how charges in a prior case were dismissed because the State was not ready when the case was called. He demonstrated a knowledge of pleas and plea bargains. He knew a guilty plea waived appellate review most of the time. As is its prerogative, the jury agreed with Crawley, finding him competent. He was later convicted by a different jury of possession of a stolen vehicle and sentenced to twenty-five years incarceration.

In an apparent case of buyer's remorse, Crawley appealed to the OCCA, arguing his conviction should be reversed because, among other things, he was forced to testify against his will at the competency hearing; the evidence was insufficient to support the jury's finding of competency; and his counsel was ineffective at the competency hearing. In an unpublished summary opinion, the OCCA rejected his claims.

_____

is merely their opportunity to discuss with you how they perceive the evidence that was presented."). "[A] jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

[3] Dr. Cooper told the jury Crawley could appreciate the serious nature and consequences of the charges, but he was not able to consult with his lawyer and rationally assist in his defense. He said Crawley 1) was guarded and suspicious (an indicator of a mental disorder); 2) lacked an ability to organize his thoughts; 3) heard voices (a clear sign of mental illness); 4) suffered from paranoid thinking (his lawyer and the prosecutor were allied to convict him, the attorneys covered up illegal actions and the judge was party to their acts, and the state had been persecuting him since 1982); and 5) was incapable of making decisions in his best interest (he had an irrational belief the jury would acquit regardless of the evidence).

The OCCA determined it was proper for Crawley to be called to testify at the competency hearing because his counsel requested the hearing and, under Oklahoma law, a defendant may be called to testify against his will if he initiated the competency proceeding. The OCCA likewise rejected Crawley's sufficiency of the evidence argument, concluding that, despite Dr. Cooper's opinion, "the jury was within its province in giving greater weight to [Crawley's] testimony that he was competent." (R. Doc. 5, Ex. C at 3.) Relying on *Nelson v. State*, 21 P.3d 55, 60 (Okla. Crim. App. 2001),[4] and *Strickland v. Washington*, 466 U.S. 668 (1984), the OCCA held Crawley "failed to show that trial counsel's conduct was deficient in following his ethical obligation to abide by his client's wishes [to be found competent and proceed to trial]."[5] (R. Doc. 5, Ex. C at 2.)

Crawley filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2254, which the district court denied in a thorough and cogent opinion. We granted Crawley's application for a Certificate of Appealability (COA) and appointed counsel to represent

_____

[4] The issue in *Nelson* was "whether Appellant's counsel was ineffective for not pursuing the insanity defense despite the fact that he was instructed by his competent client to waive the defense, which appeared to be the only valid defense to the crimes charged." 21 P.3d at 60. The court held counsel was not ineffective because he "was ethically bound to accept his competent client's decision regarding the plea to be entered." *Id.*

[5] The OCCA could have offered a more detailed explanation, fully discussing federal law, but it was not required to do so. Indeed, the state court does not even have to be aware of relevant Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); accord: *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) ("[W]e owe deference to the state court's *result*, even if its reasoning is not expressly stated.").

him on appeal. Crawley challenges only the OCCA's rejection of his ineffective assistance of counsel claim, arguing his lawyer was ineffective by accommodating Crawley's preference to be found competent despite counsel's personal misgivings and the contrary opinions of Dr. Cooper and the prosecutor.

## II. Discussion

"In an appeal of the dismissal of a federal habeas corpus petition, we review a district court's findings of fact for clear error and its conclusions of law de novo." *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quotations omitted), *cert. denied*, 127 S.Ct. 1819 (2007). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1), establishes the requirements for granting a writ of habeas corpus to a state prisoner. It provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1)     resulted in a decision that ***was contrary to, or involved an unreasonable application of, clearly established Federal law***, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d)(1) (emphasis added).

Crawley argues: "The state court's decision that counsel had to defer to Leon Crawley on the issue of his own competence -- no matter the medical proof or counsel's own conclusion -- is an objectively unreasonable application of Supreme Court precedent." (Appellant's Supp. Opening Br. at 18.) He contends "[this] conclusion . . .

follows inescapably from the Supreme Court's decision four decades ago in *Pate v. Robinson*, 383 U.S. 375 (1966)."[6] (*Id.* at 20.)

In *Pate*, the Court held the trial court "deprived Robinson of his constitutional right to a fair trial" by failing to hold a competency hearing. 383 U.S. at 385. It noted "that counsel throughout the proceedings insisted that Robinson's present sanity [competence to stand trial] was very much in issue" and decided a competency hearing was necessary based on "the uncontradicted testimony of Robinson's history of pronounced irrational behavior." *Id.* at 384, 385-86. The Court rejected the State's argument that Robinson waived a competency determination by failing to demand a hearing, saying "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Id*. at 384. The Court observed: "While Robinson's demeanor at trial might

---

[6] Crawley also relies on *Hull v. Freeman*, 932 F.2d 159 (3d Cir. 1991), but *Hull* is not a Supreme Court case so even if it were on point, it would not provide a basis for granting his petition. In any event, *Hull* is distinguishable. Hull was found incompetent to stand trial and was committed to a state psychiatric institution. Four years later a second competency hearing was held and the State's expert testified Hull was then competent. Hull's attorney did not cross-examine the State's expert despite the fact two other physicians believed Hull to be incompetent. On petition for habeas corpus, the Third Circuit determined the first prong of *Strickland* was met, remarking it "cannot condone the failure of Hull's lawyer to bring the[ ] competing diagnoses to the attention of the factfinder at the competency hearing." *Id.* at 168. The court rejected counsel's argument that he relied on Hull's desire to be found competent, stating "[a] presumptively incompetent defendant . . . cannot be entrusted with the responsibility of dictating counsel's tactics at a competency hearing." *Id.* at 169. Crawley, unlike Hull, was presumed competent at the time of his hearing. *See* Okla. Stat. tit. 22, § 1175.4(B) (a criminal defendant is presumed competent). In addition, Crawley's competency hearing was adversarial, whereas Hull's was not.

-7-

be relevant to the ultimate decision as to his sanity [competence to stand trial], it cannot be relied upon to dispense with a hearing on that very issue." *Id.* at 386.

The only conclusion "inescapably" flowing from *Pate* is that, at most, a competency hearing is required where the evidence before the court strongly suggests the defendant's competence is questionable. This case is quite the opposite. Here, a competency hearing was held and a jury found Crawley to be competent.

We follow the analytical method demonstrated in *Knowles v. Mirzayance*, -- U.S. --, 129 S.Ct. 1411 (2009), a recent Supreme Court decision reversing the Ninth Circuit. The Court held the Ninth Circuit erred in concluding the state court's decision to deny Mirzayance's ineffective assistance of counsel claim violated clearly established federal law because "this Court has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Id.* at 1419 (quotations omitted). To avoid the same fate, we decline Crawley's invitation to construe *Pate* as clearly establishing Crawley's counsel was deficient in abiding Crawley's wish to have his competence to stand trial determined by a jury. *Pate* did not establish, let alone clearly establish, such a rule and we are aware of no Supreme Court case so doing.[7]

---

[7] The Supreme Court has held "[t]he Constitution does not permit trial of an individual who lacks 'mental competency.'" *Indiana v. Edwards*, -- U.S. -- , 128 S.Ct. 2379, 2383 (2008). But such a broad principle does not sufficiently inform this debate. A much more specific rule would be necessary to upset the OCCA's decision. *See Wright v. Van Patten*, 552 U.S. 120, --, 128 S.Ct. 743, 747 (2008) (reversing grant of habeas relief "[b]ecause our cases give no clear answer to the question presented, let alone one in [the defendant's] favor"); *Carey v. Musladin*, 549 U.S. 70, 76 (2006) (reversing grant of

In that regard, *Carey v. Musladin*, 549 U.S. 70 (2006), is instructive. At times during Musladin's murder trial some of the victim's family sat in the front row of the spectators' gallery wearing buttons displaying a picture of the victim. *See id.* at 72. Musladin objected, but the trial judge refused to intervene. *Id.* at 72-73. In federal habeas proceedings the Ninth Circuit decided the family's conduct deprived Musladin of a fair trial based upon *Estelle v. Williams*, 425 U.S. 501 (1976) (the state may not force a defendant to stand trial before a jury wearing identifiable prison clothing), and *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986) (concluding four uniformed state troopers seated in the spectator's area immediately behind the defendant was not so inherently prejudicial as to deprive the defendant of a fair trial, but announcing that "the question must be . . . whether 'an unacceptable risk is presented of impermissible factors coming into play.'"). The Ninth Circuit concluded *Williams* and *Flynn* "clearly established the test for inherent prejudice applicable to spectators' courtroom conduct" and the California courts' failure to apply that standard was contrary to and an unreasonable application of clearly established Federal law. *Id.* at 74.

The Supreme Court reversed, saying the prejudice resulting from spectator conduct (as opposed to the state-sponsored conduct evident in *Williams* and *Flynn*) was an open question. It concluded:

Given the lack of holdings from this Court regarding the potentially

habeas relief where the question presented "is an open question in our jurisprudence"); *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (reversing grant of habeas relief where right at issue was not clearly established in Supreme Court precedent).

prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court unreasonably applied clearly established Federal law. No holding of this Court required the California Court of Appeal to apply the test of *Williams* and *Flynn* to the spectators' conduct here. Therefore, the state court's decision was not contrary to or an unreasonable application of clearly established federal law.

*Id.* at 77 (quotations and citation omitted).

With no Supreme Court precedent establishing the rule Crawley urges upon us, we retreat to the general *Strickland* standard. *See Knowles*, 129 S.Ct. at 1419 ("[T]his Court has repeatedly applied [the *Strickland*] standard to evaluate ineffective-assistance-of-counsel claims where there is no other Supreme Court precedent directly on point."). To prevail on an ineffective assistance of counsel claim under *Strickland*, a petitioner must show: (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense."[8] 466 U.S. at 687. The Supreme Court has "declined to articulate

_____

[8] The Court recognized a limited exception to *Strickland* in *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Court held "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." 466 U.S. at 659. "*Cronic*, not *Strickland*, applies . . . when counsel is either totally absent, or prevented from assisting the accused during a critical stage of the proceeding" or when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Wright,* 128 S.Ct. at 746, 746 n.1 (quotations omitted). In regard to the latter, "the attorney's failure must be complete." *Id.* at 746 n.1 (quotations omitted). This case is properly examined under *Strickland*, not *Cronic*, because defense counsel was present and active at the competency hearing, advocating Crawley's position. And, more importantly, the competency issue was subjected to meaningful adversarial testing. The prosecutor did not merely go through the motions; he actively advocated the state's position that Crawley was not competent to stand trial. He told the jury the State considered Crawley incompetent and in need of treatment so he could assist his attorneys in defending the case. He presented Dr. Cooper's testimony and argued in favor of Cooper's diagnosis. And he exposed Crawley's flawed thought processes through his direct and re-direct examination.

-10-

specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 129 S.Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Moreover, when evaluating an ineffective assistance of counsel claim under § 2254(d)(1), our review is "doubly deferential." *Id.* We defer to the state court's determination that counsel's performance was not deficient and, further, defer to the attorney's decision in how best to represent a client. *See id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (per curiam). In *Knowles,* the Court explained:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold. And because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

129 S.Ct. at 1420 (quotations and citation omitted); *see also Yarborough*, 541 U.S. at 664 ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

Against that backdrop we look to counsel's conduct. Graves, suspecting problems, initiated the process whereby Crawley's competency was litigated in a manner consistent with the standard set out in *Drope v. Missouri*, 420 U.S. 162 (1975). Thus, Graves'

actions cannot be characterized as uninformed. But he was on the horns of a dilemma. He could abide Crawley's fervent and clearly-stated wishes, even though they were ill considered (not an unfamiliar place for defense counsel to find himself) or he could override Crawley's preferences and advocate for what he considered to be his client's "best interest." Crawley now argues, with the benefit of hindsight and the prospect of twenty-five years in prison, that Graves should have taken the latter course. But Crawley had already sought to discharge his first lawyer and had Graves ignored Crawley's instructions, it might well have cemented Crawley's seemingly paranoid suspicions, prompting more pro se motions and acrimonious proceedings and fatally poisoning the attorney-client relationship. It was, indeed, an unenviable position. Graves made a judgment call, which the OCCA determined not to be professionally deficient. We might disagree, but we cannot say the OCCA unreasonably applied *Strickland* when it concluded Graves' fully informed decision to comply with Crawley's instructions did not constitute ineffective assistance of counsel.[9]

**AFFIRMED.**

---

[9] The OCCA's holding is, of course, fact-dependent, making our deference to it more compelling. This is not a case where a defendant was utterly and obviously incompetent. Crawley was able, with some assistance from his attorney but in spite of the State's evidence and argument to the contrary, to convince the jury he was competent – no small feat. Crawley demonstrated a sophisticated understanding of the criminal process (gained from first-hand experience). He filed a number of *pro se* motions; he sought to have his first counsel relieved because that counsel failed to timely file motions; he filed motions for discovery, to quash and to dismiss. As the State says, "While ultimately lacking in merit, the motions were coherent, understandable and cited legal authority. Clearly, [Crawley] understood the proceedings against him and was able to assist his counsel to the extent he wanted to." (Appellee's Br. at 13 (citation omitted).)