**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 25, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PRESTON J. BLAKE,

     Petitioner - Appellant,

v.

JAMES JANECKA, Warden; GARY K.
KING, New Mexico Attorney General,

     Respondents - Appellees.

No. 14-2053
(D.C. No. 2:13-CV-00454-LH-KBM)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **BALDOCK**, and **EBEL**, Circuit Judges.
_____

Petitioner Preston Blake is currently incarcerated in a state prison in Santa Rosa, New Mexico. Blake was convicted of burglarizing the home of an elderly woman and was sentenced to 41 years in prison following a New Mexico state court jury trial. After failing to obtain relief from his conviction and sentence in state court, Blake filed a 28 U.S.C. § 2254 habeas application in the United States District Court for the District of New Mexico, asserting, among other things, claims of ineffective assistance of counsel and the introduction at trial of custodial statements in violation of *Edwards v. Arizona*, 451 U.S. 477 (1981). The magistrate judge recommended that

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Blake's petition be denied. Blake objected to the recommendation, but the district court adopted the recommendation in full and denied the petition. The district court also denied Blake a Certificate of Appealability ("COA") for all of his claims. Blake then sought from this court a COA, and we granted one concerning two of the 15 issues he raised: (1) whether Blake is entitled to relief on a claim of ineffective assistance of counsel for Blake's appointed counsel's failure to investigate his alibi witness's story; and (2) whether Blake is entitled to relief on a claim of a violation of his *Edwards* rights due to the introduction of statements he made to police after officers allegedly denied his requests for counsel.

Blake now raises these two issues, and also seeks to expand his COA. Exercising jurisdiction under 28 U.S.C. § 2253, we affirm the district court regarding the two issues Blake brings before us.

We also deny Blake's motion to expand his COA and grant the state's motion to deny the expansion. Given this determination, we need not rule on the state's motion to strike the motion to expand the certificate of appealability.

## BACKGROUND

*A. Factual Background*

Blake's imprisonment stemmed from the burglary of 82-year-old JoAnn Vickers's home on March 31, 2008, in Portales, New Mexico.[1] At about 11:00 p.m., Vickers

---

[1] In establishing a motive, the state offered testimony that, a few days before the burglary, the money Blake's girlfriend had saved for their rent was stolen, leaving

heard her doorbell ring but, after looking through her window, saw no one outside of her home. While attempting to fall back asleep, she heard noises outside her house and got out of bed to investigate. When she was walking down the hallway, two men appeared, pushed her down, and began to kick her.

Vickers could not see either man's face because it was dark, but she noted that they carried blue and white flashlights that they shone in her eyes while repeatedly telling her to keep her eyes closed. Vickers heard the burglars going through boxes and drawers in her bedroom, searching for jewelry. She believed she also heard the burglars speaking to a third burglar inside the house, although she never saw anyone else. Once the burglars left, Vickers—who suffered a broken hip in the attack—managed to summon her neighbor, Theta Ainsworth, who called 911.

Two days after the burglary, Blake and his step-brother, J.B. Stuart (accompanied at one point by Stuart's girlfriend, Rose Peretti), went to two different stores in Portales—Woody's Jewelry and SOS Pawnshop—and attempted to sell some loose diamonds.[2] At Woody's, Blake told an employee that the diamonds had come from his grandfather. At SOS, an employee testified that Blake instead had said that the diamonds were left over from a ring his mother was making, and that she had given them to him. Law enforcement had informed stores in the area about the burglary and

---

them desperate for cash. Despite being unemployed, Blake told her not to worry, that he would take care of it.

[2] Peretti testified at trial that Blake and Stuart had arrived at her house the morning after the burglary, with Blake carrying the loose diamonds in a bag. She told the jury that Stuart and Blake had hoped to sell the diamonds for rent money. She also stated that Stuart and Blake had told her the diamonds had come from their recently deceased grandmother.

asked them to be on the lookout for people attempting to sell certain items of jewelry. Based on these warnings, employees from both shops called the police and alerted them to the attempted sales. Barbara Ortiz, an SOS Pawnshop employee, described for police the car she saw Blake and Stuart leave in and gave them its license plate number.

Based on Ortiz's description and the license plate number, police located the car in front of Blake's house about two hours later. When they knocked on the door to the house and were let inside, officers recognized Blake, Stuart, and Peretti from a surveillance video that Woody's Jewelry had provided. The officers detained Blake, Stuart, and Peretti and brought them to the police department for questioning.

At the police department, Detective Tom Moore questioned Blake. Detective Moore testified at trial—without objection from Blake—that he had advised Blake of his rights and Blake had agreed to talk to him. Detective Moore testified that Blake gave inconsistent statements, first claiming he did not know where the diamonds had come from but later claiming they had come from his deceased grandmother. Blake volunteered that he had the diamonds at his house, signed a consent form for Detective Moore to go to his house and retrieve the diamonds, and accompanied Detective Moore back to the house. Blake took Detective Moore to a bedroom that he shared with his girlfriend and showed him the diamonds, which were on a dresser. Officers also noted a small black flashlight on Blake's dresser. When officers later executed a search warrant at Blake's residence, they also found a Crown Royal bag behind a picture frame on the same dresser—the same brand of bag Ms. Vickers had

4

kept some of her jewelry in—containing some of Vickers's jewelry, as well as two of Vickers's earrings on another table in the same bedroom.

Later that day, officers brought Blake and Stuart back to the police department for further questioning. During this session, Sergeant Brad Raines questioned Blake. Sergeant Raines testified—again, without objection from Blake—that he had advised Blake of his rights and that Blake had agreed to speak with him. Sergeant Raines testified that Blake had told him the same story he had told Detective Moore earlier that day, in the same sequence: he first denied any knowledge about the diamonds, but then said they were handed down from a grandmother. Based on his training and experience, Sergeant Raines also testified that Blake evinced signs of deception during his interrogation.

The police also questioned Stuart when they brought him and Blake to the police department. Sergeant Raines initially questioned Stuart, and Stuart told Sergeant Raines that he, Blake, and Joel Zertuche had found the loose diamonds in a pillowcase in an alley by a trash can. Stuart testified that, later that day, he told Sergeant Raines the truth—that he, Blake, and Zertuche had been the burglars at Vickers's home—because he felt guilty about the injuries they inflicted on Vickers during the burglary.

The police eventually arrested Blake and Stuart. Blake was charged with aggravated burglary, conspiracy to commit aggravated burglary, possession of stolen

property valued at more than $2500, tampering with evidence, and two counts of receiving stolen property.[3]

Jennifer Burrill initially represented Blake before and at trial. After the state's first witness finished testifying, Burrill informed the state court judge that Blake wished to proceed pro se for the rest of trial. The court thoroughly reviewed the counsel-waiver procedures with Blake and determined that Blake had waived his right to counsel knowingly, intelligently, and voluntarily. The judge asked that Burrill remain as standby counsel.

Sergeant Raines, Detective Moore, and Blake himself testified at trial. As noted above, both Sergeant Raines and Detective Moore testified that Blake was advised of his rights and agreed to speak with them, testimony to which Blake did not object at trial. During his own testimony at trial, Blake described his questioning at the police station from his perspective. He did not suggest that the officers had failed to read him his rights, nor that he asked for and was denied counsel on either occasion when officers questioned him.

A number of other witnesses also provided testimony that supported the state's case. Stuart testified about the roles he and Blake played in the burglary. And Blake's girlfriend, Sandra Trantham, provided important additional facts for the state on cross-examination when she testified for Blake. First, she admitted that someone had stolen the money she had saved for rent at the house she shared with Blake and Stuart

---

[3] Stuart was charged with burglary, conspiracy to commit burglary, tampering with evidence, and two counts of receiving stolen property. He pleaded guilty to and received a sentence of six years.

and that they were desperate for money. Despite his being unemployed, she testified that Blake had told her he would take care of it. She also admitted that, when police initially questioned her, she had said, "I know they did it. They did it because of the rent money getting stolen," when referring to Blake and Stuart's role in the burglary of Vickers's home. The jury convicted Blake of all of the charges against him.

## B. Procedural Background

Blake filed a pro se notice of appeal and requested appellate counsel. The trial court required Blake to prepare his own docketing statement, but it appointed him an attorney for the rest of his appeal. In his direct appeal before the New Mexico Court of Appeals, Blake raised five issues: (1) the state district court erred in allowing Blake to represent himself; (2) his speedy-trial rights were violated; (3) his counsel was ineffective for failing to alert the court to potential juror bias; (4) his motion for a continuance should have been granted; and (5) the state's evidence was insufficient, as a matter of law, to sustain his conviction. The New Mexico Court of Appeals affirmed his conviction, and the New Mexico Supreme Court denied his petition for certiorari.

Blake then filed a state habeas petition pro se with the trial court. In this petition, for the first time, Blake raised (among other issues) the issue of Burrill's turning away Candice Owens—his purported alibi witness—and his contention that he requested and was denied counsel during his initial police questioning. According to Owens (in a letter she provided to Blake shortly after he submitted his state habeas petition), a few days after police arrested Blake she spoke with Burrill about being an

7

alibi witness for Blake. Owens claims that she had told Burrill that Blake and his children were with her at a hotel in Portales on the night of the burglary and that she had offered to provide Burrill with hotel receipts and photographs taken that night as proof. Owens claims that Burrill never followed up with her and repeatedly failed to return her phone calls. The trial court denied Blake's petition without an evidentiary hearing. Regarding Blake's alibi-witness argument, the court found that Burrill had made a "valid tactical decision" in choosing not to use Owens's testimony. Concerning all of the other issues raised in Blake's state habeas petition, the trial court found that these "were substantially the same claims presented to and reviewed by the Court of Appeals [in Blake's initial appeal]" and therefore did not merit further discussion. The court concluded that Blake was not entitled to relief as a matter of law. Blake filed a certiorari petition with the New Mexico Supreme Court, challenging the state trial court's denial of his petition. The New Mexico Supreme Court denied certiorari.

Proceeding under 28 U.S.C. § 2254, Blake then filed in federal district court the habeas petition underlying this action. In his petition, he raised the same issues he had previously raised in his state habeas petition. The magistrate judge issued proposed findings and conclusions, recommending that the district court reject all of Blake's claims and dismiss his petition with prejudice. Blake filed objections to the magistrate's proposed findings and conclusions, but the district court adopted the magistrate's findings and supplemented them with some of its own.

8

Regarding the two issues before us here, the district court first agreed with the state trial court that Blake's attorney had made a "valid, tactical decision to not use the alibi witness" and also found that Blake had "not presented clear and convincing evidence that rebuts these factual findings or the jury's guilty verdict." Regarding the *Edwards* issue, the district court did not make any further statements and instead merely affirmed the magistrate's findings. The magistrate had found that Blake failed to identify a single statement he made during questioning that the prosecution used to secure his conviction and that Blake's failure to do so meant that "the state court did not act contrary to clearly established law and did not unreasonably apply the law when it denied relief on this basis."

Blake petitioned this court for a COA and we granted one on two issues: (1) ineffective assistance of counsel for failure to adequately investigate and elicit testimony by a known alibi witness, and (2) introduction of evidence obtained in violation of *Edwards*. Blake appeals on these two issues and also seeks to expand his COA.

## DISCUSSION

### A. Ineffective Assistance of Counsel

Blake's first claim before this court is that he was prejudiced by ineffective assistance of counsel. Under *Strickland v. Washington*, 466 U.S. 668 (1984), succeeding on such a claim requires a plaintiff to show (1) "that counsel's

representation fell below an objective standard of reasonableness"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687–88. We have noted that our review of counsel's performance under *Strickland*'s first prong must be "highly deferential." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (quoting *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010)).

And a plaintiff who, like Blake, brings an ineffective-assistance-of-counsel claim in a § 2254 proceeding after the state court has adjudicated the claim on the merits faces a still higher burden. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") states that Blake can prevail only if he can demonstrate that the state-court adjudication either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or, alternatively, "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2) (2012). In the context of habeas review of ineffective-assistance claims that a state court has adjudicated on their merits, then, we have noted that our review is "doubly deferential," *Byrd*, 645 F.3d at 1168 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)), because we both "defer to the state court's determination that counsel's performance was not deficient and, further, defer to the attorney's decision in how to best represent a client," *id.* (quoting *Crawley v. Dinwiddie*, 584 F.3d 916, 922 (10th Cir. 2009)).

10

A § 2254 proceeding on an ineffective-assistance of counsel claim also proceeds differently based on what "clearly established Federal Law" the habeas petitioner argues the state court's determination was "contrary to, or an unreasonable application of." 28 U.S.C. § 2254(d)(1). If the petitioner points us to a Supreme Court decision applying *Strickland* to a factual situation similar to the case before us, we proceed by considering whether the state court's decision was contrary to, or an unreasonable application of, that precedent. *See, e.g.*, *Woods v. Donald*, 135 S. Ct. 1372, 1375–77 (2015) (considering whether the state court's decision was contrary to, or an unreasonable application of, *United States v. Cronic*, 466 U.S. 648 (1984), a case directly on point when considering the habeas petitioner's ineffective-assistance-of-counsel claim). By contrast, if the only "clearly established Federal Law" the habeas petitioner raises is *Strickland* itself, we then apply *Strickland*'s more general standard to evaluate the petitioner's ineffective-assistance-of-counsel claim. *See, e.g.*, *Knowles*, 556 U.S. at 122–23 (explaining that, when there is no directly on-point Supreme Court precedent governing a plaintiff's ineffective-assistance-of-counsel claim, habeas relief "may be granted only if the state-court decision unreasonably applied the more general standard for ineffective-assistance-of-counsel claims established by *Strickland*"). In doing so, however, we must keep in mind two things: first, that the question we must answer "'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold,'" *id.* at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); and, second,

11

"because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard," *id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Here, Blake points us only to *Strickland*, and we thus consider his ineffective-assistance-of-counsel claim under the second of these frameworks.

Blake believes, however, that Burrill's performance was deficient enough to meet even the stringent standards of this framework. He asserts that the state trial court unreasonably applied *Strickland* when it determined that Burrill "made a 'valid tactical decision'" in failing to fully investigate Owens, his alibi witness. He contends that Burrill disregarded his alibi witness after a few questions and did not pursue any testimony from her. Further, Blake notes two mistakes that may have contributed to the district court's erroneous determination that the trial court's decision was reasonable: (1) the district court's error in characterizing the trial court's holding as a factual, rather than a legal, determination; and (2) the district court's misplaced reliance on the conflict between Blake's own trial testimony and the testimony of his alibi witness. For these reasons, Blake believes he is entitled to an evidentiary hearing regarding his alibi-witness claim.

The state counters that, even assuming everything Blake says is true, he is entitled to relief only if he can demonstrate a reasonable probability that—but for Burrill's error—the result of his trial would have been different. The state posits that Blake is unable to make this showing because he has never presented an affidavit or sworn statement from Owens, and there were many pieces of evidence tying him to the

12

burglary. The state notes that Blake's own self-representation clouds the *Strickland* issue further, because it makes it nearly impossible to "determine with any reasonable degree of probability whether . . . it was [Mr. Blake's] counsel's pre-trial efforts, as opposed to his own self-representation or the evidence against him, which resulted in the unfavorable outcome.'"

We believe the state has the better of this argument, and we therefore affirm the district court on this issue. This is not a case where Blake has consistently claimed an alibi and only after his trial and direct appeal discovered a witness to support that alibi. Rather, Blake asks this court to grant relief based on a witness supporting an alibi that he alleges he never knew he had through all of his proceedings before his state habeas petition. Indeed, the alibi in question would require that during the burglary (about 11:00 p.m.) Blake not be at home with his children (as he testified at trial) but instead that he be conveniently at a hotel with his mistress from 10:00 p.m. to 5:00 a.m., having brought his children along. This seems a unique family-bonding experience that one would presumably remember when accused less than two days later of participating in a burglary that occurred on that same night.

The questionable nature of this claim is rendered even more suspect—for *Strickland* purposes—by Blake's undertaking his own representation for much of his trial. Surely even if Burrill's failure to fully investigate Owens's claims fell below an objective standard of reasonableness on *Strickland*'s first prong,[4] Blake cannot show

---

[4] Our order should not be read, however, to suggest that we find Burrill's representation to have been unreasonable. We are mindful of the Supreme Court's

13

that her failure prejudiced him sufficiently to meet *Strickland*'s second prong. *See Strickland*, 466 U.S. at 694 (noting that plaintiff must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). Blake had full opportunity to call Owens as a witness in his defense when he undertook his own representation following the state's first witness. In such a circumstance, we cannot separate the effect of Burrill's failure to fully investigate Owens's claims in the first instance from the effect of Blake's failure to pursue this alibi once he undertook his own representation. And our conclusion here is buttressed by the state's significant evidence against Blake, including the presence of Vickers's stolen jewelry in his bedroom, Stuart's confession implicating Blake, and Blake's changing stories to the police regarding his knowledge of the diamonds' origins. Blake's inability to show a reasonable probability that, absent Burrill's error, his trial would have resulted in a favorable outcome dooms his ineffective-assistance-of-counsel claim. For this reason, we affirm the district court on this issue.

---

directive to give state-court *Strickland* determinations fairly significant "latitude" under 28 U.S.C. § 2254(d), *Knowles*, 556 U.S. at 123, and—given the dubious nature of the alibi here—we believe the state court's determination that Burrill made a "valid tactical" decision to not pursue the alibi further to have been well within that latitude. *See Harrington v. Richter*, 562 U.S. 86, 108 ("An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."). We therefore also agree with the district court's decision to affirm the state court on this basis, regardless of the errors Blake asserts may have clouded the district court's analysis. Nonetheless, because the state's argument before us focused on *Strickland*'s second prong, we reach our decision on that basis.

14

*B. Edwards Claim*

Blake also argues that he is entitled to an evidentiary hearing regarding his claim that the state introduced at trial custodial statements he made to officers in violation of his Fifth Amendment privilege against self-incrimination because they denied him his request for counsel. Blake argues that these statements were inadmissible under *Edwards*, 451 U.S. at 477, and that—if his allegations are true—he would be entitled to habeas relief. Further, and perhaps most importantly, Blake argues that he need not meet the requirements of AEDPA in regard to this claim because the state courts did not address it on the merits.

The state counters that we should apply the rebuttable presumption set forth in *Johnson v. Williams*, 133 S. Ct. 1088 (2013), where the Supreme Court instructed that deferential review of state court proceedings under AEDPA is appropriate "when the state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding." *Id.* at 1091. Under this standard, the state suggests that the state trial court's order dismissing Blake's state habeas corpus petition—which expressly addressed only Blake's ineffective-assistance-of-counsel and excessive-sentencing claims—should constitute an adjudication of Blake's *Edwards* claim on the merits.

Resolving this threshold issue is key to our ability to grant Blake the relief he seeks. If the state court adjudicated Blake's claim on the merits, then we can grant him relief only if he can demonstrate that the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). This is an intentionally difficult standard to meet.

*Johnson*, 133 S. Ct. at 1091.

Here, we believe that the state court did not adjudicate Blake's *Edwards* claim on the merits. The state trial court's order dismissing Blake's habeas petition found that, other than Blake's ineffective-assistance-of-counsel claim, all of Blake's state habeas claims "were substantially the same claims presented to and reviewed by the Court of Appeals" in Blake's initial appeal. But this is not so. Until his state habeas petition, Blake had never claimed that the custodial statements he made to police, later introduced at trial, followed a denial of his request for counsel.[5] It appears that the state court thus dismissed Blake's *Edwards* claim inadvertently, rather than giving it proper consideration. Such a dismissal cannot constitute an adjudication on the merits

---

[5] Indeed, we note that Blake's failure to raise this *Edwards* claim earlier than in his state habeas petition should have probably led to its being procedurally barred under New Mexico law. *See, e.g.*, *Duncan v. Kerby*, 851 P.2d 466, 468 (N.M. 1993) ("We have held that New Mexico postconviction procedures are not a substitute for direct appeal and that our statutes do not require collateral review of issues when the facts submitted were known or available to the petitioner at the time of his trial. When a defendant should have raised an issue on direct appeal, but failed to do so, he or she may be precluded from raising the issue in habeas corpus proceedings." (citation omitted)). But the state acknowledges in its brief that it never sought to enforce a procedural bar for failure to exhaust state remedies, waiving this argument. *See Hale v. Gibson*, 227 F.3d 1298, 1310–11 (10th Cir. 2000) ("Because the state does not raise procedural bar on appeal, we will consider the procedural due process claim on the merits.").

of Blake's *Edwards* claim. *Id.* at 1097 ("If a federal claim is rejected as a result of sheer inadvertence, it has not been evaluated based on the intrinsic right and wrong of the matter.").

But Blake has not fully escaped AEDPA just yet.[6] In another section, the law provides that, if "the applicant has failed to develop the factual basis of a claim in State court proceedings," we cannot grant an evidentiary hearing unless the claim relies on either: (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable"; or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(i)–(ii). In such a circumstance, an applicant also must demonstrate that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id.* § 2254(e)(2)(B). "[A] failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000).

Thus, a further threshold question weighing on our ability to grant Blake the relief he seeks is whether Blake was diligent in state court in developing a factual record

---

[6] While the state never argued—and the district court never determined—that this portion of AEDPA may be relevant to Blake's claim, we may affirm the district court "on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011).

supporting his claim that officers refused his request for counsel. *See Parker v. Scott*, 394 F.3d 1302, 1324–25 (10th Cir. 2005). A habeas petitioner acts diligently where he seeks "to develop the factual basis underlying his habeas petition, but a state court prevent[s] him from doing so." *Smallwood v. Gibson*, 191 F.3d 1257, 1266 (10th Cir. 1999) (quoting *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998)).

Here, our review of the record shows that—before filing his state habeas petition—Blake never suggested that he had asked for and had been denied counsel during questioning. Blake points us to four places in the record where he claims he "alleged in state and federal court that he requested counsel during his initial questioning, but the officers denied him that right." These are the places, in chronological order: (1) Blake's state habeas petition; (2) Blake's petition for a writ of certiorari to the New Mexico Supreme Court challenging the trial court's denial of his state habeas petition; (3) Blake's federal habeas petition; and (4) Blake's objections at the federal district court to the magistrate judge's Proposed Findings and Recommended Disposition.

Importantly, none of Blake's citations are to the state-court trial record, and a review of the trial transcripts explains why. There were numerous points during trial at which Blake could have developed the factual record underlying the alleged denial of his request for counsel but failed to do so. These include: (1) when both Sergeant Raines and Detective Moore testified at trial that Blake was advised of his rights and agreed to speak with them and Blake failed to object to this testimony; (2) when Blake cross-examined both Sergeant Raines and Detective Moore and failed to ask

18

them any questions regarding his alleged request for counsel and their alleged denial of counsel; (3) when, although he had asked during his questioning of Detective Moore whether the videotape of Moore's initial questioning of him at the police station could be entered into evidence, Blake did not pursue this request when presented with the opportunity to do so after the completion of the state's case;[7] and (4) when Blake, acting as his own counsel as well as a witness, testified about the officers' questioning him but never mentioned that he had requested and had been denied counsel.

Given these circumstances, we have little difficulty finding that Blake did not exercise diligence in developing the factual record underlying his claim in state court. Further, given this failure, Blake is entitled to an evidentiary hearing on this claim only if he can demonstrate that the claim either relies on (1) a new rule of constitutional law or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(i)–(ii). Neither is the case here. We therefore affirm the district court's denial of Blake's request for an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court regarding the two claims

---

[7] Blake instead only asked whether the videotape of the officers' questioning of Stuart could be admitted.

raised in this appeal. We also deny Blake's motion to expand the COA and grant the state's motion to deny the expansion.

ENTERED FOR THE COURT


Gregory A. Phillips
Circuit Judge