FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 23, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

PRESTON J. BLAKE,

    Plaintiff - Appellant,

v.

GEO GROUP, INC.; R. SMITH; J.
BEAIRD, Wardens; L. RIVAS; FNU
PUENTE, Correction Officers, Lea Co.
Corrections Facility; BOARD OF
COUNTY COMMISSIONERS OF LEA
COUNTY,

    Defendants - Appellees.

No. 23-2120
(D.C. No. 1:17-CV-00807-MLG-KK)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **MATHESON**, and **McHUGH**, Circuit Judges.

_____

Plaintiff Preston Blake, a New Mexico state prisoner appearing pro se, filed

this 42 U.S.C. § 1983 civil rights action alleging that officials at a prison facility he

was housed at violated his constitutional rights by placing him in disciplinary

segregation, seizing and destroying his personal property, including legal documents,

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and then transferring him out of protective custody and into the general prison population at another facility.  The district court granted summary judgment in favor of defendants.  Mr. Blake now appeals.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I

The Lea County Correctional Facility (LCCF) is a prison facility in Hobbs, New Mexico that houses post-conviction felony offenders who are in the custody of the New Mexico Corrections Department (NMCD).  At all times relevant to this action, LCCF was operated by a private entity called Geo Group, Inc. (GEO).

Mr. Blake, who was convicted in New Mexico state court of burglarizing the home of an elderly woman, was housed at LCCF in the summer of 2016.  On the morning of August 1, 2016, Mr. Blake's mother, Sandra Stuart, attempted to visit Mr. Blake at LCCF.  Upon her arrival at LCCF, Mrs. Stuart was interviewed by an LCCF employee and admitted she was carrying a balloon of contraband she had hidden on her person.  Mrs. Stuart agreed to give the balloon to an agent from the Lea County Drug Task Force.  That agent opened the balloon "and discovered 13 strips of Suboxone as well as 2.32 grams of Methamphetamine."  R. at 28.

Mr. Blake was charged with the disciplinary offense of dealing in dangerous drugs and placed in segregation.  Because of Mr. Blake's placement in segregation, Juanita Puente, a property officer at LCCF, took custody of the personal property in Mr. Blake's cell.  On August 9, 2016, a disciplinary hearing was held concerning the charge.  At the conclusion of the hearing, the hearing/disciplinary officer, Lupe

Rivas, found by a preponderance of the evidence that Mr. Blake committed the charged offense and recommended that Mr. Blake be sanctioned with thirty days of disciplinary segregation time, plus the suspension of visitation, commissary, and phone privileges for 365 days. Mr. Blake filed an administrative appeal. The warden at LCCF, Raymond Smith, denied Mr. Blake's appeal.

Mr. Blake completed his 30-day disciplinary segregation sanction on August 31, 2016, but remained in segregation on temporary restrictive housing status until September 12, 2016. Mr. Blake was then transferred to the Penitentiary of New Mexico (PNM) to participate in a drug suppression program (DSP) operated by the NMCD. He received his personal property after arriving at PNM and allegedly discovered that certain of his legal documents had been destroyed.

Mr. Blake remained at PNM until August 21, 2017, when he was transferred to the Guadalupe County Correctional Facility (GCCF). He was subsequently transferred from GCCF to the Southern New Mexico Correctional Facility (SNMCF) on February 26, 2018. According to Mr. Blake, he suffered two serious assaults from inmates, one in October 2017, while he was in the general population at GCCF and the other in September 2018, while he was in the general population at SNMCF.

II

Mr. Blake initiated these proceedings in August 2017 by filing a pro se civil rights complaint that named as defendants LCCF, GEO, Mr. Smith, John Beaird, who served as the associate warden for security at LCCF, Ms. Rivas, and Ms. Puente.

3

The district court screened Mr. Blake's complaint as required by 28 U.S.C. § 1915A(a) and concluded all the claims, except for those asserted against Ms. Puente for her handling of Mr. Blake's personal property, were subject to dismissal under 28 U.S.C. § 1915(e)(2). As to the claims against Ms. Puente, the district court concluded, in relevant part, that Mr. Blake validly alleged she violated his right to access the courts by destroying a habeas corpus petition that Mr. Blake had prepared, as well as a supporting alibi affidavit from a woman named Candice Owens. The district court dismissed the claims against LCCF and GEO with prejudice and dismissed the remaining claims, except for the claims against defendant Puente, without prejudice and granted Mr. Blake leave to file an amended complaint remedying the identified deficiencies in the dismissed claims.

Mr. Blake filed an amended complaint naming the same defendants and including the Board of County Commissioners for Lea County (the Board) as a new defendant. The district court screened Mr. Blake's amended complaint, sua sponte dismissed some of the claims pursuant to § 1915(e)(2), and concluded the remaining claims could proceed. The district court ordered defendants to prepare and file a *Martinez* report as to those remaining claims.[1]

---

[1] A *Martinez* report, named after the case of *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), is intended to help "develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

4

Defendants filed their *Martinez* report in September 2020. Mr. Blake filed a lengthy response to the report that included supporting exhibits. Defendants also filed a motion for summary judgment, as did Mr. Blake.

The magistrate judge (MJ) issued proposed findings and recommended dispositions (PFRD) regarding the summary judgment motions and recommended that summary judgment be granted in favor of all the remaining defendants. The MJ noted that Mr. Blake asserted four claims relating to the alleged destruction of his personal property: (1) that Ms. Puente violated his constitutional right of access to the courts by destroying his habeas petition and the supporting alibi affidavit from Ms. Owens; (2) that Ms. Puente destroyed Mr. Blake's personal property in retaliation for his exercise of First Amendment rights; (3) that Mr. Beaird destroyed Mr. Blake's personal property in retaliation for his exercise of First Amendment rights; and (4) that Ms. Puente violated Mr. Blake's due process rights by destroying the affidavit of his alibi witness. With respect to the first of these claims, the MJ noted that Mr. Blake had, prior to 2016, filed unsuccessful state and federal habeas petitions alleging that his trial counsel was ineffective for failing to present the alibi testimony of Ms. Owens, whose affidavit was later allegedly destroyed by defendant Puente. *See Blake v. Janecka*, 624 F. App'x 640, 647 (10th Cir. 2015) (noting the "questionable nature" of the claim and the "state's significant evidence against Blake," and ultimately concluding that Mr. Blake failed to show he was prejudiced by his trial counsel's failure to present Owens' alibi testimony). The MJ concluded Mr. Blake failed to show "a genuine issue of material fact regarding whether"

5

Ms. "Puente's alleged destruction of his legal property caused him actual injury," and thus recommended that summary judgment be granted in favor of Ms. Puente on this claim. R. at 594. As for the second and third claims, the MJ concluded Mr. Blake failed to present "evidence sufficient to support the inference that" Ms. Puente and Mr. Beaird "destroyed his property in order to retaliate against him for the lawsuit and grievances he filed against them." *Id.* at 595. The MJ also concluded that Ms. Puente was entitled to summary judgment in her favor on the fourth claim because Mr. Blake "presented no evidence to show that [she] knew Ms. Owens' affidavit was potentially exculpatory when she allegedly destroyed it," and, in any event, "state and federal courts had already considered and rejected the alibi defense" Mr. Blake "claims the affidavit would have supported." *Id.* at 597.

The MJ also noted that Mr. Blake asserted two Eighth Amendment claims in his amended complaint: (1) that Mr. Beaird and Mr. Smith were deliberately indifferent to his health and safety because they knew he would be at substantial risk of assault by other inmates if he were placed in general population and nevertheless transferred him to the general population at PNM; and (2) that defendants GEO and the Board had an unconstitutional policy of placing protective custody inmates in general population settings. With respect to the first claim, the MJ concluded that Mr. Blake failed to demonstrate a genuine issue of material fact regarding whether he was at substantial risk of serious harm while housed at PNM. The MJ noted that Mr. Blake admitted he was on lockdown status most of the time at PNM and, as a result, assaults in general were rare and he was never assaulted there. The MJ thus

6

concluded as a matter of law that "any risk to which" Mr. Blake "was exposed due to his transfer to" PNM "was not objectively sufficiently serious to violate the Eighth Amendment." *Id.* at 599. The MJ also concluded that Mr. Blake failed to establish a genuine issue of material fact regarding whether Mr. Beaird and Mr. Smith knew that Mr. Blake faced a particularized risk of harm if transferred to PNM or that placing Mr. Blake in the DSP program at PNM would pose a substantial risk of harm, and that there was no evidence that either of these defendants played a role in Mr. Blake's subsequent transfer from PNM to GCCF and SNMCF. Finally, the MJ concluded there was no evidence from which a jury could find that either GEO or the Board were responsible for the policy that resulted in Mr. Blake being transferred from LCCF to PNM following his disciplinary infraction.

Mr. Blake filed written objections to the PFRDs. The district court overruled Mr. Blake's objections and adopted the PFRDs in full. The district court therefore dismissed the amended complaint with prejudice and denied all of Mr. Blake's pending motions as moot.

Mr. Blake thereafter filed several motions, including a motion to reconsider. The district court denied all of those motions and entered final judgment.

Mr. Blake now appeals.

## III

### A

In his first issue on appeal, Mr. Blake argues that the district court erred in denying "all disclosure, discovery process, [and] numerous motions" he filed seeking

7

the disclosure of evidence relating to his "access to courts" claim.  Aplt. Br. at 3.  For the reasons that follow, we find no merit to this argument.

After the parties filed their summary judgment motions, Mr. Blake filed a motion seeking what he characterized as "specific non-duplicative discovery." R. at 551.  Mr. Blake sought a variety of discovery in the motion, including, as relevant here, testimony from defendant Beaird "as to the state of" Mr. Blake's "legal documents," a log book, "camera footage of segregation," which Mr. Blake alleged would show defendant Beaird and another officer entering his cell "and leav[ing] with a trash bag of ripped documents," and "camera footage" of the day Mr. Blake's legal documents were returned to him.  *Id.* at 552, 554.  Mr. Blake also filed a motion for continuance in which he similarly sought additional discovery related to his claim that the affidavit from Ms. Owens was destroyed.

The MJ construed Mr. Blake's motions "as motions for relief under Federal Rule of Civil Procedure 56(d)" and recommended they be denied.  *Id.* at 606.  The MJ concluded the items of discovery sought by Mr. Blake were "inessential" because "[e]ven if th[o]se items were to show what" he "says they would show, the Court's recommendation . . . regarding [his] destruction of property claims would not change."  *Id.* at 607.  The MJ therefore concluded Mr. Blake failed to satisfy the requirements of Rule 56(d).  The district court subsequently adopted the PFRD and denied Mr. Blake's motions.

When a summary judgment motion is filed, the nonmoving party "may request additional discovery by showing via affidavit or declaration that without discovery 'it

8

cannot present facts essential to justify its opposition.'" *Gutierrez v. Cobos*, 841 F.3d 895, 907–08 (10th Cir. 2016) (quoting Fed. R. Civ. P. 56(d)). To obtain additional discovery, the nonmovant "must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." *Id.* at 908 (alteration in original) (quotation marks omitted). We review a district court's ruling on a Rule 56(d) motion for abuse of discretion. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015).

After reviewing the record on appeal, we are not persuaded the district court abused its discretion in denying Mr. Blake's motions. In moving for summary judgment on Mr. Blake's access-to-the-courts claim, defendants argued, in relevant part, that even if Mr. Blake's habeas petition and the supporting affidavit from Ms. Owens had been destroyed, he could not demonstrate actual injury "because he ha[d] thoroughly and completely litigated and repeatedly lost the alibi witness issue in state and federal court" post-conviction and habeas proceedings. R. at 482. The district court agreed with that argument, noting Mr. Blake had previously sought and been denied state and federal habeas relief based on Ms. Owens' purported alibi testimony. In light of this conclusion, the evidence that Mr. Blake sought in his Rule 56(d) motions, all of which went to the question of whether his legal documents were actually destroyed, would have done nothing to undermine the district court's conclusion that he could not establish any actual injury flowing from the destruction

9

of the habeas petition and affidavit. Although Mr. Blake argues the affidavit from Ms. Owens would have helped him establish his actual innocence of the crimes of which he was convicted, that argument was effectively refuted by this court in affirming the denial of Mr. Blake's petition for federal habeas relief. *See Blake*, 624 F. App'x at 647 ("[T]he alibi in question would require that during the burglary (about 11:00 p.m.) Blake not be at home with his children (as he testified at trial) but instead that he be conveniently at a hotel with his mistress," Ms. Owens, "from 10:00 p.m. to 5:00 a.m., having brought his children along. This seems a unique family-bonding experience that one would presumably remember when accused less than two days later of participating in a burglary that occurred on that same night.").

B

In his second issue on appeal, Mr. Blake argues the district court "mostly ignored" the evidence he submitted in opposition to the defendants' motion. Aplt. Br. at 3. According to Mr. Blake, the evidence he submitted "not only disproves [the] affidavits in [the] *Martinez* report, but proves" those affidavits were "perjured." *Id.* Mr. Blake fails, however, to identify which of his many claims he is referring to, what items of evidence the district court ignored, and which of the affidavits were purportedly perjured. Although we liberally construe Mr. Blake's pleadings due to his status as a pro se litigant, we will not act as his advocate. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). Consequently, we reject Mr. Blake's arguments as inadequately briefed. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995).

Mr. Blake also, as part of his second issue, complains that the district court denied his motions for preliminary injunctions[2] and that the denials "resulted in severe assaults, continued transports, [and] constant placement in segregations." Aplt. Br. at 3. Again, however, Mr. Blake fails to specify which of the preliminary injunction motions he is referring to and, in turn, fails to specify how the district court erred in denying those motions. We therefore also reject these arguments as inadequately briefed.

IV

The judgment of the district court is affirmed. Mr. Blake's motion to proceed in forma pauperis on appeal is granted. The remaining motions filed by Mr. Blake are denied.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[2] Mr. Blake filed seven motions for injunctive relief with the district court. Early on in the district court proceedings, Mr. Blake filed a motion for preliminary injunction asking the district court to stop GEO from placing him in the general population at LCCF. The district court denied that motion as moot because Mr. Blake was transferred out of LCCF shortly after he filed his motion. Mr. Blake then filed another motion for preliminary injunction asking the district court to stop NMCD from placing him in the general prison population in any prison facility in New Mexico. The district court denied that motion because NMCD is not a party to this action. Mr. Blake then filed three more motions for injunctive relief. The district court denied the first of those as moot and the second two motions on the merits. Mr. Blake then filed two more motions for injunctive relief, both of which were denied as moot.