The STATE of Ohio, Appellee,

v.

TENACE, Appellant.

[Cite as *State v. Tenace* (1997), 121 Ohio App.3d 702.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–95–010.

Decided July 25, 1997.

*Julia R. Bates,* Lucas County Prosecuting Attorney, *Craig T. Pearson,* Assistant Prosecuting Attorney, for appellee.

*Jeffrey M. Gamso* and *Larry V. DiLabbio,* for appellant.

HANDWORK, Judge.

This is an appeal from a November 30, 1994 judgment entry of the Lucas County Court of Common Pleas in which the court sentenced appellant, Troy Matthew Tenace, to death. The court accepted a jury verdict that found appellant guilty of aggravated robbery and of aggravated murder with death penalty specifications. The specifications were that he purposely caused the

death of another while committing robbery and that he was the principal offender.

Appellant has presented the following assignments of error for consideration on appeal:

"First Assignment of Error

"The trial court erred to appellant's prejudice when it denied his *pro se* motion asking that trial counsel withdraw and that he be given a continuance in order to obtain new counsel and when it permitted trial counsel, over appellant's request, to withdraw his plea of not guilty by reason of insanity and replace that plea with a straight plea of not guilty.

"Second Assignment of Error

"Appellant was denied effective assistance of counsel when his trial counsel, against his explicit wishes, withdrew his plea of not guilty by reason of insanity and replaced it with a straight plea of not guilty.

"Third Assignment of Error

"The trial court erred to appellant's prejudice by setting an arbitrary ceiling of $7,500 for expert assistance.

"Fourth Assignment of Error

"The trial court erred to appellant's prejudice when it overruled his motion to suppress.

"Fifth Assignment of Error

"The trial court wrongly granted the state's challenge for cause of prospective juror Timothy Moss.

"Sixth Assignment of Error

"The trial court abused its discretion in admitting into evidence State's Exhibit 7, a photograph of the deceased which does not reveal how he looked at the time of the offense but, rather, indicate [*sic*] how he looked two days later when his by–then–partly–decomposed body was found.

"Seventh Assignment of Error

"Appellant's due process rights were violated by the failure of the trial court to inquire whether he knowingly and intelligently waived his right to testify at trial.

"Eighth Assignment of Error

"The trial court committed prejudicial error in failing individually to voir dire the jurors about appellant's outburst and in not instructing the jurors to disregard the outburst.

"Ninth Assignment of Error

"If any error regarding the court's failure to voir dire or instruct the jury about appellant's outburst was waived by trial counsel's failure to request such a remedy, then appellant received ineffective assistance of counsel.

"Tenth Assignment of Error

"The trial court committed prejudicial error when it instructed the jury that it had to reach a unanimous decision that the aggravating circumstance did not outweigh the mitigating factors before it could consider a life sentence.

"Eleventh Assignment of Error

"Insofar as appellant's trial counsel may have waived this issue, appellant received constitutionally ineffective assistance of counsel.

"Twelfth Assignment of Error

"The trial court violated appellant's rights under the Constitutions of the United States and of the state of Ohio when it denied his motion to dismiss the death specification.

"Thirteenth Assignment of Error

"A death penalty law which has not been enforced in over thirty years is, by definition, cruel and unusual.

"Fourteenth Assignment of Error

"The death penalty in this case can only be viewed as freakish, capricious, and arbitrary.

"Fifteenth Assignment of Error

"The sentence imposed by the trial court is illegal as violative of R.C. 2949.22.

"Sixteenth Assignment of Error

"The trial court erred in imposing a death sentence in this case because the death penalty law as applied in Ohio violates R.C. 2929.05(A) by requiring appellate courts and the Supreme Court, in conducting their R.C. 2929.04(A) Review of 'similar cases' for proportionality, to review only those in which a sentence of death was imposed and ignore those in which a sentence of life without parole eligibility after twenty full years or life with parole eligibility after thirty full years was imposed. The Current method also violates the rights to fair trial and due process and results in the imposition of cruel and unusual punishment as set forth in the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and in Section[s] 1, 2, 5, 9, 10, 16, and 20, Article I of the Ohio Constitution.

"Seventeenth Assignment of Error

"Insofar as the issue addressed in the Sixteenth Assignment of Error may have been waived by not having been raised below, appellant received ineffective assistance of counsel.

"Eighteenth Assignment of Error

"A defendant who is sentenced to death following a trial and mitigation hearing in which his counsel was deficient has been denied his rights to fair trial and due process and is subjected to cruel and unusual punishment, all as set forth in the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and in Sections 1, 2, 5, 9, 10, 16, and 20, Article I of the Ohio Constitution.

"Nineteenth Assignment of Error

"The jury and then the trial court erred in concluding, and this court should not conclude, that the aggravating circumstance, that the aggravated murder in this case was committed in the course of an aggravated robbery and that appellant was the principal offender in the aggravated murder, outweighed the mitigating factors beyond a reasonable doubt.

"Twentieth Assignment of Error

"The sentence of death was wrongly imposed because it is inappropriate and not proportional to the sentence imposed in similar cases."

We begin by considering appellant's first assignment of error.

In support of his first assignment of error, appellant argues that the trial court erred when it denied his request that his appointed trial counsel be withdrawn and that his trial be continued for ninety days to enable his family to hire private counsel. Appellant contends that a clear and absolute breakdown of the attorney-client relationship occurred when, against his wishes, his court-appointed attorneys withdrew his plea of not guilty by reason of insanity and proceeded to trial on a plea of not guilty.

The Supreme Court of Ohio has ruled:

"To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, paragraph four of the syllabus.

The question in this case, therefore, is whether there is evidence that such a breakdown occurred.

Appellant asserts that the record clearly shows that he wished to go to trial with a plea of not guilty by reason of insanity and that his appointed counsel withdrew the plea against his wishes and over his protest. Appellee responds

that the statements made by appellant on the record leave some question that appellant objected to the withdrawal of the plea of not guilty by reason of insanity. Appellee further responds that absent a clear objection on the record from appellant, his attorneys were free to make a tactical decision to withdraw the plea of not guilty by reason of insanity and to proceed to trial on a straight plea of not guilty. This court has carefully examined the record, which shows that the following events occurred with regard to the plea of not guilty by reason of insanity ("NGRI").

On March 10, 1994, a written plea of NGRI was filed for appellant in the Lucas County Court of Common Pleas. The trial court referred appellant to the Court Diagnostic & Treatment Center for a report on his competency to stand trial pursuant to R.C. 2945.37 and for an evaluation pursuant to R.C. 2945.40.

On April 25, 1994, the trial court stated that it had received reports from the diagnostic and treatment center. The reports showed that appellant was competent to stand trial. The trial judge also stated that the reports indicated that appellant did not meet the criteria for a plea of NGRI.[1] Appellant's counsel indicated they would still proceed with the NGRI plea.

On October 11, 1994, appellant was referred for a second competency evaluation following his attempt to commit suicide in jail. His appointed attorneys informed the court that they did not believe that appellant could assist in his own defense due to his mental state.

On October 28, 1994, the trial court reported on the record that it had received the results of the second competency evaluation, and that appellant was competent to stand trial.[2] At the hearing on October 28, 1994, appellant first made statements on the record showing that he personally wished to pursue a defense based upon a plea of NGRI, even if his counsel did not believe that that was the best way to proceed.

Appellant made his statements in support of a *pro se* motion asking the trial court to permit his appointed counsel to withdraw and to grant him a ninety-day continuance of his trial date so that he could obtain private counsel. When the trial judge asked appellant, on the record, his reasons for the motion, he told the trial judge:

---

1. The trial judge stated on the record that these findings from the report were admitted into the record. The report therefore contains the findings, but not the physical report, which was not marked as an exhibit or filed in the record.

2. Once again, the trial judge stated on the record that these findings from the report were admitted into the record. The report therefore contains the findings, but not the physical report, which was not marked as an exhibit or filed in the record.

"Due to the nature of the possible death sentence, I wish to be represented by defense of not guilty by reason of insanity due to cocaine addiction. I am enclosing numerous letters I've written to my lawyer, * * * notifying him of my intent. There are certain legal and medical documents that will corroborate my defense.

"Under my Constitutional rights to due process and effective assistance of counsel, I do not feel I can go forth with my scheduled trial if I am not adequately represented. By 'adequately' I mean as I was [sic] described above. * * *"

He made further statements indicating that he wanted an insanity defense and that he wanted new counsel because he and his current counsel "have a difference in our defense." He explained that he believed he had suffered brain damage due to cocaine use. He stated that he wanted an expert to testify on the issue of cocaine addiction and brain damage to support his insanity defense.

The trial judge asked appellant's appointed counsel whether they had discussed possible defenses with appellant. When they said yes, the trial judge told appellant: "My strong suggestion is that you let them run the case, because they know what they're doing, instead of you run the case." The trial judge then denied the motion filed by appellant, and appellant asked that his objection be noted for the record.

On November 1, 1994, appellant continued to make his wishes known regarding the plea of NGRI. He again filed a *pro se* motion asking the trial court to permit his appointed counsel to withdraw and asking the trial court to grant a continuance of his trial date to permit him to hire private counsel. This time the *pro se* motion was written and was filed into the record. The motion states, in part:

"Defendant makes this contention, because counsels [sic] have failed to consult in a meaningful manner with defendant about his theory of defense for the upcoming trial in the court.

"Defendant wants to present an insanity defense to refute the intent element to the State's charge of aggravated murder."

"Defendant's appointed counsels [sic] have failed to substantially investigate the insanity theory of defense. Going so far as to informing defendant's mother that Ohio has no provision for this defense under Ohio law! Defendant contends, that counsels [sic] have failed to take into account, that it is counsel's job to effectively assist him. So long as defendant's theory of defense is grounded in sound and correct jurisprudence, he's entitled to having this defense presented to a jury. The jurors being the ultimate 'trier of facts.' "

The court addressed appellant on the record regarding the motion and denied the request.

On November 2, 1994, appellant again made his wishes known when his appointed counsel withdrew the NGRI plea and entered a "straight not guilty plea to the indictment and all the specifications." The trial judge approved the withdrawal of the NGRI plea and began to address other matters. Appellant's appointed counsel interrupted and stated:

"Excuse me, Your Honor. Before we go any further, Mr. Tenace has asked me to inform the Court that that's not his decision. However, we've made our decision as counsel and evaluating the strengths and weaknesses of that particular defense and decided to withdraw that defense."

The trial judge stated: "Is that correct, Mr. Tenace?" Appellant replied: "Yes, Your Honor." And the trial judge said: "We shall show it withdrawn."

Even after the trial began, appellant continued to raise the issue that he still wished to maintain a defense based upon a plea of NGRI. Appellant asked the trial judge for permission to conduct cross-examination on a particular witness called by the prosecution. When the trial court denied his request, appellant stated:

"Okay. I'd like to say this: Obviously, the defense that I wanted to present, my lawyers do see that it is of some value because they are planning to use that in mitigation. So, obviously, they see that it has some legal value. And again I want it noted that I object to this; that I wanted that defense from the beginning, the one that they're using from mitigation, I wanted this used during my trial. And I just want it noted that I object to this, again, and I'd like it on record."

Appellant again made a statement for the record showing that the NGRI plea was withdrawn against his wishes after he had had an outburst in court during the cross-examination of his sister during the mitigation phase of the trial. Appellant stated:

"From the very beginning, I don't feel I'm being represented properly and I'm upset. I'm upset. From the very beginning, I notified these people that—what defense I want. And it says in the law books that I have a right to do that, but yet I've been denied that right. That's why I'm upset."

■ This court finds, after reviewing the overall record associated with the entry and withdrawal of appellant's NGRI plea, that it is clear that the plea was withdrawn against appellant's wishes. We therefore consider the question of whether it was error for the trial court to permit appellant's counsel to withdraw the NGRI plea against appellant's wishes.

Two appellate cases are instructive regarding the issue we now consider. In the first case, the Ninth District Court of Appeals considered the specific

question: "May counsel * * * waive or withdraw defendant's plea of not guilty by reason of insanity over the objection of defendant himself?" *State v. Turner* (Sept. 17, 1980), Medina App. No. 963, unreported. The *Turner* court ruled that such a waiver or withdrawal may not occur without the client's consent.

The facts in *Turner* are quite similar to the facts in the case at bar. In *Turner*, the defendant's appointed trial counsel told the trial court that he had secured clinical and medical reports regarding the defendant's psychiatric and psychological tests. He stated that on the basis of those reports, he would proceed to trial on a straight not guilty plea. The defendant objected, on the record, to the withdrawal of his NGRI plea. The Ninth District Court of Appeals said:

"The entering of any plea to the charges contained in an indictment is a fundamental act reserved to the province of defendant himself. It is always hoped that, after a full and complete discussion of the issues involved—both factual and legal, the defendant considers the historic role of the attorney as counselor and enters that plea not only most protective of his rights but reflective of the posture of the case against him. But in those instances where counsel's advice is rejected, the accused preserves always his right to risk the eventual verdict of court or jury and any punishment inflicted upon him as a result. It is his right to determine the primary question posed to him at arraignment: 'Shall I plead guilty, not guilty (and if the latter plea might raise also the question of my own mental culpability at the time of the commission of the crime with which I am charged) not guilty by reason of insanity?' The professional duty of counsel in this sphere is to present defendant those choices available, to explain their meanings, and then, to abide by his client's choices. Defense counsel cannot decide himself the path to be chosen; he cannot waive one or more of the defenses once chosen by his client, or withdraw one or more of the pleas entered, without the consent of the person he represents."

Appellee contends that a second case from the Eighth District Court of Appeals is more instructive. In the case cited by appellee, *State v. Smith* (1981), 3 Ohio App.3d 115, 3 OBR 130, 444 N.E.2d 85, the Eighth District Court of Appeals of Ohio considered whether a trial court had committed error when it allowed a defendant's trial counsel to withdraw a plea of NGRI without personally addressing the defendant to learn whether that was the defendant's desire. The Eighth District Court of Appeals noted that there was "some uncertainty" regarding whether the decision to withdraw the NGRI plea was a strategy decision or a decision within the exclusive control of the defendant. *Id.* at 118, 3 OBR at 133–134, 444 N.E.2d at 89.

The *Smith* court cited the ABA Standards Relating to the Administration of Criminal Justice, which provide that the decision of what plea to enter is to be

made by the accused. The court stated that those guidelines are meant to apply only to a guilty or a not guilty plea. *Id.* at 118, 3 OBR at 133–134, 444 N.E.2d at 89–90. The court acknowledged the ruling of the Ninth District Court of Appeals in *Turner, supra,* and stated that even if that decision was presumed to be correct, it did not govern the case under consideration because one factor was different: in *Turner* the defendant objected on the record to the withdrawal of the plea.

The Eighth District Court of Appeals then stated:

"We hold that in the absence of any constitutional provision, statute, or court rule restricting defense counsel's authority to withdraw a plea of not guilty by reason of insanity, the trial court acts properly in accepting that withdrawal without personally discussing the matter with the defendant himself, *at least when the record discloses no dissension from that decision by the defendant.*" (Emphasis added.) 3 Ohio App.3d at 120, 3 OBR at 136, 444 N.E.2d at 91.

As we have previously noted, in the case at bar, appellant did object on the record to the withdrawal of the NGRI plea. For that reason, *Smith* is distinguishable from the case at bar, and *Turner* remains viable and persuasive.

Further research shows that in addition to the existing Ohio case law, an Ethical Consideration supports a ruling that error occurs when trial counsel is permitted to withdraw a plea over a client's recorded objection. Ethical Considerations were adopted by the Supreme Court of Ohio as guidelines for the conduct of attorneys. EC 7–7 states:

"In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer. As typical examples in civil cases, it is for the client to decide whether he will accept a settlement offer or whether he will waive his right to plead an affirmative defense. A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable and as to the prospects of success on appeal, *but it is for the client to decide what plea should be entered and whether an appeal should be taken.*" (Emphasis added.)

EC 7–7 clearly states that a lawyer must advise a client whether a particular plea is desirable, but it is the client who makes the decision about what plea should be entered. The language is not restricted to informing a client about a guilty or a not guilty plea; it contemplates a discussion on any plea and on whether the lawyer deems the plea desirable.

■ Appellee contends that the decision to withdraw a plea of NGRI and instead to enter a straight plea of not guilty constitutes a tactical decision that is in the province of the trial attorney. However, research conducted by this court shows that an attorney is free to make a tactical decision regarding what plea to enter only when a client does not choose to make the decision or does not object on the record.

In 1983, the United States Court of Appeals for the Seventh Circuit considered a habeas proceeding in which the defendant was complaining that his trial counsel had withdrawn a plea of NGRI. *Weber v. Israel* (C.A.7, 1984), 730 F.2d 499. The *Weber* court cited the discussion found in *Smith*, 3 Ohio App.3d 115, 3 OBR 130, 444 N.E.2d 85, and ruled that in its case, the decision of trial counsel to withdraw a plea of NGRI was a tactical decision. Once again, however, the facts are distinguishable from the case at bar, because in *Weber*, the court noted that Weber "gave absolutely no indication that he disagreed with the withdrawal of the insanity plea or objected to the withdrawal in any manner." 730 F.2d at 508.

Further research shows that other state and federal courts have ruled that when a client is found competent to stand trial, the client is also competent to decide what plea to enter, even if the client's choice does not follow the legal advice from trial counsel. For instance, an Arizona appellate court considered a case in which the defendant was found competent to represent himself. The trial court appointed advisory counsel to assist the defendant in presenting his case. *State v. Fayle* (1982), 134 Ariz. 565, 658 P.2d 218.

The advisory counsel repeatedly asked the trial court to permit him to present a complete insanity defense, even though the defendant had withdrawn the plea of not guilty by reason of insanity. The trial court permitted the advisory counsel to present a limited insanity defense within limits that the defendant agreed to accept. The defendant was convicted of assault with intent to commit murder and was sentenced.

The defendant then appealed, arguing that his trial counsel should have been permitted to pursue a full insanity defense, even though he would not consent to an insanity plea at trial. *Id.* at 221. The appellate court ruled that the wishes of the defendant regarding the insanity plea had to be followed when the defendant acted voluntarily and intelligently, even when the choices made were detrimental to the defendant. It quoted the following:

" 'Because the defendant must bear the ultimate consequences of any decision, we conclude that if a defendant has acted intelligently and voluntarily, a trial court must defer to his or her decision to waive the insanity defense.' " *Id.* at 229, quoting *Frendak v. United States* (D.C.App. 1979), 408 A.2d 364, 378.

The *Fayle* court went on to discuss some strategic reasons why a defendant might reject an insanity defense (does not want treatment; prefers prison to an insane asylum; believes killing was justified) and concluded that no error occurred when the wishes of the defendant regarding his insanity plea were honored by the trial court. *Id.,* 658 P.2d at 229–230.

The Supreme Court of California also considered a case where a defendant made some choices regarding a NGRI plea that his trial counsel advised were not the best tactical choice. *People v. Medina* (1990), 51 Cal.3d 870, 274 Cal.Rptr. 849, 799 P.2d 1282. The defendant in *Medina* initially entered a plea of NGRI along with a not guilty plea. He subsequently withdrew the NGRI plea. During trial, he insisted on reinstating the NGRI plea against his counsel's advice. He was convicted of murder and sentenced to death.

The defendant appealed, saying that the trial court should not have permitted him to reinstate his NGRI plea. The Supreme Court of California, sitting *en banc,* ruled that the decision whether to plead not guilty by reason of insanity is personal to the defendant and the "trial court had no discretion to deny defendant's motion to reinstate his insanity plea solely because his counsel opposed that choice on tactical grounds." *Id.,* 51 Cal.3d at 900, 274 Cal.Rptr. at 868, 799 P.2d at 1301.

Similarly, at least one federal circuit court has ruled that an attorney who abides by a client's decision not to enter an insanity plea has not rendered ineffective assistance of counsel. *Alvord v. Wainwright* (C.A.11, 1984), 725 F.2d 1282. In *Alvord,* the defendant had previously been found not guilty by reason of insanity in Michigan. He was arrested in Florida for committing three murders and was found competent to stand trial. He told his trial counsel that he did not want an insanity defense. Instead, he insisted on asserting a weak alibi defense.

Trial counsel complied with the defendant's instructions, and the defendant was found guilty and was sentenced to death. The defendant appealed, arguing that he received ineffective assistance of counsel.

The United States Court of Appeals for the Eleventh Circuit said that "given Alvord's competency, [his trial counsel] was ethically bound to follow his client's wishes." *Id.* at 1288. The court stated that if a client was so impaired that he could not choose for himself what to do, the trial court should find that the client was not competent to stand trial. *Id.* at 1289. The court found that the defendant had received effective assistance of counsel. *Id.*

A petition for certiorari was filed from the decision of the United States Court of Appeals for the Eleventh Circuit. The United States Supreme Court denied the petition. Two justices, Justice Marshall and Justice Brennan, dissented from

the decision denying certiorari. *Alvord v. Wainwright* (1984), 469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291.

In the dissent authored by Justice Marshall and joined by Justice Brennan, it was argued that the case should have been reviewed because the defendant's trial attorney did nothing to investigate the possible insanity defense available to his client or to persuade his client that insanity was the best defense. Justice Marshall stated:

"The question is whether counsel had a duty to investigate his client's case and make a minimal effort to persuade him to follow the only plausible defense. The question is not whether counsel has a duty to override his client's wishes, or pursue fruitless investigations, thereafter." *Id.* at 959, 105 S.Ct. at 357, 83 L.Ed.2d at 293 (Marshall, J., dissenting). In referring to the decision from the lower court, Justice Marshall stated:

"The decision establishes that absolute deference to the uninformed reaction of a defendant is acceptable, and that counsel's decision not to pursue the issue and make an attempt to persuade his client is reasonable." *Id.* at 959, 105 S.Ct. at 357, 83 L.Ed.2d at 293.

Justice Marshall pointed out that a lawyer must be sure that his client "has access to information relevant to the pretrial and trial decisions that the accused must make himself, such as whether to testify on his own behalf, to waive a jury trial, or to plead guilty." *Id.* at 959–960, 105 S.Ct. at 358, 83 L.Ed.2d at 293–294.

Justice Marshall then stated:

"Thus, if pursuit of an insanity defense is a decision to be made by the accused, it must be done on the advice of a well-informed attorney who has assured that his client has based his decision on relevant information." *Id.* at 960, 105 S.Ct. at 358, 83 L.Ed.2d at 294.

In footnote five, Justice Marshall acknowledged:

"Ethical Consideration 7–7 of the American Bar Association Code of Professional Responsibility suggests that the decision on an insanity defense might ultimately be one for the client, but that it must be made after the lawyer has fully informed himself and his client on the issue." *Id.* at 960, 105 S.Ct. at 358, 83 L.Ed.2d at 294, fn. 5.

The language contained in the EC 7–7 under consideration by the justices is the same as the language used in the EC 7–7 adopted in Ohio. The remarks of Justice Marshall, joined by Justice Brennan, therefore indicate an acknowledgment that the power to make the decision regarding whether to enter a plea of NGRI rests with the client.

■ We conclude, therefore, that once appellant was found competent to stand trial, he was also competent to make a decision regarding what plea to enter. Even if his trial counsel believed that appellant's choice was not the best tactical choice, appellant's decision should have been final.[3] The trial court erred when it allowed appellant's appointed counsel to withdraw the NGRI plea even though appellant objected on the record.

A final issue to consider is appellee's contention that even if error did occur, the error was harmless. Crim.R. 52(A) defines "harmless error" as:

"Any error, defect, irregularity, or variance *which does not affect substantial rights* shall be disregarded." (Emphasis added.)

■ We cannot find that harmless error exists in this case because the right of a defendant who is competent to stand trial, but who insists that he was insane at the time of the crime, to choose what plea to enter is a substantial right.

As the Ninth District Court of Appeals for Ohio noted in *Turner, supra,* Medina App. No. 963, unreported, prejudice occurs when a court allows trial counsel to withdraw a plea of NGRI over a client's objection because the client is deprived "of the opportunity of presenting testimony relating to his chosen defense." *Id.* The Ninth District Court of Appeals expounded further, stating:

"In ruling as we do, we recognize that the psychiatric evidence elicited, if any, from the professionals contacted by defendant's attorney might well not be beneficial to defendant's cause. This fact, however, does not lessen defendant's right to enter his chosen plea. Factually, the testimony of the expert witnesses may not have been used at all; the defendant himself could have testified concerning his thought processes at the time of the incidents which gave rise to the indictments against him."

■ We therefore conclude that in this case a breakdown occurred in the attorney-client relationship of such magnitude that appellant was deprived of the right to effective assistance of counsel. The trial court erred when it permitted trial counsel to make a decision that is reserved to a competent client: what plea will be entered to the charges brought against the client. The error affected a substantial right and is, therefore, not harmless. Appellant's first assignment of error is well taken.

The remaining assignments of error are rendered moot by our disposition of the first assignment of error. The judgment of the Lucas County Court of Common Pleas is reversed, and this cause is remanded for further proceedings

---

3. ABA Standards for Criminal Justice Standard 4–5.2 indicates that when an attorney and a client have a disagreement on significant matters of tactic or strategy, the lawyer should make a record of the differences and of the conclusion reached, while preserving confidentiality.

consistent with this decision. Appellee is ordered to pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

GLASSER and SHERCK, JJ., concur.