[Cite as *State v. Walton*, 2024-Ohio-6071.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 23CA4016 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| MARCUS K. WALTON, | : | |
| | : | |
| Defendant-Appellant. | : | **RELEASED: 12/20/2024** |

<u>APPEARANCES:</u>

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay S. Willis, Assistant Scioto County Prosecuting Attorney, Portsmouth, Ohio, for appellee.

Karyn Justice, Portsmouth, Ohio, for appellant.

Wilkin, J.

{¶1} This is an appeal of Scioto Court of Common Pleas judgment entry that found appellant, Marcus K. Walton ("Walton"), guilty of harassment with a bodily substance in violation of R.C. 2921.38(A) and (D), a fifth-degree felony. In his sole assignment of error, Walton asserts that he received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment, U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

{¶2} After reviewing the record, the parties' arguments, and the applicable law, we find that Walton has failed to prove that his trial counsel was ineffective. Therefore, we affirm his conviction.

FACTS AND PROCEDURAL BACKGROUND

{¶3} On December 17, 2020, Walton was an inmate at the Southern Ohio Correctional facility in a suicide cell. When a corrections officer delivered Walton's meal, Walton threw a cup of urine and feces on the officer's chest. The State charged Walton with violating R.C. 2921.38(A), harassment with a bodily substance.

{¶4} On March 18, 2022, at his arraignment, Walton expressed that he wanted to plead not guilty by reason of insanity (NGRI), but a moment later asserted he wanted to plead not guilty by reason of temporary insanity. The judge told Walton that he should discuss that with his counsel, and, if he still desired to file a NGRI plea, then Walton's counsel should "file the written motion." The judge entered a plea of not guilty on Walton's behalf.

{¶5} On May 11, 2022, Walton filed a "Motion for Competency Evaluation and Ability to Enter a Plea of Not Guilty by Reason Insanity[,]" citing R.C. 2945.371. In a May 24, 2022 entry, the trial court ordered the "Court Clinic" to examine Walton "to determine his sanity at the time of the act, pursuant to Ohio Revised Code, Section 2945.371, and competency to stand trial." After evaluating Walton, the Court Clinic determined him to be competent to stand trial and further determined that he did not meet the criteria for a NGRI defense.

{¶6} On October 17, 2022, the trial court held a competency hearing. The court indicated that it had received Walton's competency report and that Walton had not filed a written plea of NGRI. Walton indicated that he still wanted to plea temporary insanity. The court informed Walton that Ohio does not recognize

temporary insanity.  The court also informed Walton that his competency evaluation indicated that he would not qualify to plead NGRI.  Walton's counsel told the court that he did not stipulate to the qualification of the doctor who evaluated him, and Walton requested to be reevaluated by another doctor. Based on the report from the Court Clinic, the court found Walton competent to stand trial, and indicated that it would set a pretrial date.

{¶7} On January 11, 2023, the court held a final pre-trial hearing.  Walton informed the court his attorney had not come to see him and had not spoken to him outside his court appearances.  After the State confirmed that a plea involving a six-month prison term was still open, it noted that Walton's counsel had informed the State that Walton still wanted to plead NGRI even though he was found to not qualify for such a plea.  The State offered that if Walton admitted to the act of harassing the correction officer, he could argue for mitigation of his sentence based on the circumstances at the time.

{¶8} Walton asked the court if he had to go to trial because he could not plead temporary insanity.  The court informed Walton that no NGRI plea had been filed on his behalf with the court.  Walton's counsel stated no such plea had been filed because the Court Clinic's report found that he did not qualify for a NGRI plea.  Nevertheless, Walton informed the court that he wanted to plead temporary insanity.  The court stated that there has been no plea of NGRI.  The court also recalled that it had found Walton to be competent to stand trial and he did not meet the requirement to plead NGRI.

{¶9} The court then asked Walton if he was rejecting the State's plea offer. Walton responded affirmatively. He then asked the court if he could plead "temporary insanity." The court responded: "no, not at this point. Not a few days before trial, no." Walton's counsel interjected "You don't meet the criteria, according to the report[.]"

{¶10} Walton then requested a new attorney. The Court asked why he wanted a new lawyer. In part, Walton claimed that "she's argumentative about my case. I mean she may be correct, but again, I asked her when I was here before could I still proceed to trial, and she said yeah, even though – like I said, I'm competent. I mean, I –I can understand most of what's going on." The court denied Walton's request for a new lawyer.

{¶11} On the morning of trial, the court first addressed some preliminary matters including Walton's plea. The court noted that at the final pretrial, it had told him that a NGRI plea was not timely filed. The court asked defense counsel "does the Defense have any cause to allow the late entry of that plea at this time?" Defense counsel acknowledged that Walton's evaluation found Walton competent to stand trial and not insane at the time of the offense, but informed the court that he still wanted to plead NGRI. The court asked if that would require a continuance, and defense counsel responded affirmatively. The court asked if it allowed a continuance what evidence would the defense provide. The following discussion ensued:

> Ms. Webb: Well, Your honor, we would – we would have evidence that he has made complaints to – to the prison itself, and we would possibly have some records of – that the evaluator used as well that – that I did not get copies of because of what the evaluation

finding was, but if we were permitted to enter that plea and go forward on it, I would certainly do that.

The Court: His version of events to the evaluator, which if I allowed that plea, would then be admissible?

Ms. Webb: Yes your honor.

The Court: Otherwise, they're not admissible. I would remind counsel of that. Would not seem to support that kind of plea at all, Ms. Webb, and that's based on what the Defendant told the evaluator.

Ms. Webb: I understand Your honor. However, he's adamant that, you know, the – treatment that he had been receiving and that – the duress that he was under, and the stress and all the – the thoughts and – and the stressors that were going on would support.

The Court: I --I understand his position.

Ms. Webb: Yeah.

The Court: But none of that would make him a mentally ill person.

Ms. Webb: I understand that Your Honor. However, you know, temporarily he – he asserts that he was temporarily, at least, insane at the time of this happening.

The Court: Which is not a plea in the state of Ohio.

Ms. Webb: I understand.

The Court: Not a defense in the state of Ohio.

Ms. Webb: I understand.

The Court: All right. Given the – Mr. Wolfson anything from the state

Mr. Wolfson: Your Honor, it's the State's position that the argument the Defense, the Defendant in particular, is making goes either to motive if he were to use the report as submitted and agreed upon, or, in the alternative, and these are not exclusive, would go to mitigation. [Id. 4-5].

The court found that "there's been no good cause shown for the late entry of a plea of [NGRI]."

{¶12} Walton's case then proceeded to trial and the jury found him guilty. The court then sentenced Walton to a 12-month prison term to be served consecutive to the prison term that he was currently serving, advised him of the discretionary post-release control, and ordered him to pay the costs of prosecution.  It is this conviction that is the subject of this appeal.

## ASSIGNMENT OF ERROR

MR. WALTON RECEIVED INEFFECTIVE ASSISTENCE OF COUNSEL IN VIOLATION OF HIS RIGHTS PURSUANT TO THE SIXTH AMENDMENT U.S. CONSTITUTION AND ARTICLE I, SECTION 1O OF THE OHIO CONSTITUTION.

{¶13} Under his sole assignment of error, Walton makes two arguments why his counsel was ineffective: (1) she failed to file a NGRI plea on his behalf as he requested, and (2) she failed to seek waiver of the costs that were imposed at sentencing.  We address each argument separately.

## I.  NGRI Plea

{¶14} Walton first argues that his counsel was ineffective for failing to file a NGRI plea on his behalf.  Walton argues that throughout the proceedings he indicated that he wanted to enter a plea regarding an insanity defense.  Walton claims that his counsel's failure to enter a plea of NGRI "fell below an objective standard of representation[,]" which was to bring "the only possible theory of defense to the charges against him."  Walton claims that as a criminally-accused defendant it was solely *his* right to enter a plea.  While counsel may advise a criminal defendant on what plea to enter, the right to choose the plea remains

with the defendant. Throughout this case, Walton has made known that he wanted to plea NGRI, and yet that plea was never entered on his behalf. Thus, his counsel was ineffective in that regard.

{¶15} In response, the State maintains that Walton's trial counsel did not ignore his wishes or a potential NGRI plea. The State asserts that Walton's trial counsel "properly analyzed the possibility of entering the NGRI plea and acted accordingly."

{¶16} The competency evaluation determined that Walton did not meet the criteria for pleading NGRI. The State asserts that whether Walton would be prejudiced by his counsel's failure to enter a NGRI plea is mere speculation, which is insufficient to establish prejudice. The court found that neither the competency report, which found that he did not qualify for a NGRI plea, or Walton's version of the facts supported a determination that he was insane at the time he committed the offense herein. Any motion filed by Walton's trial counsel seeking to present a NGRI plea or defense would have been frivolous. The failure to file a frivolous motion cannot be grounds for an ineffective assistance of counsel claim.

A. Standard of Review

{¶17} To prove ineffective assistance of counsel, a petitioner "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Short*, 2011-Ohio-3641, ¶ 113 (4th Dist.), citing *Strickland v.*

*Washington*, 466 U.S. 668, 687-688 (1984). Therefore, "[f]ailure to establish either element is fatal to the claim." *State v. Jones*, 2008-Ohio-968, ¶ 14 (4th Dist.).

{¶18} "In Ohio a properly licensed attorney is presumed competent." *State v. Ruble*, 2017-Ohio-7259, ¶ 47 (4th Dist.), citing *State v. Gondor*, 2006-Ohio-6679, ¶ 62. Therefore, Walton has the burden of proving that his trial counsel was ineffective. *Id.*

{¶19} " 'In order to overcome this presumption, the petitioner must submit sufficient operative facts or evidentiary documents that demonstrate that the petitioner was prejudiced by the ineffective assistance.' " *State v. Avery*, 2024-Ohio-3094, ¶ 17 (4th Dist.), quoting *Gondor* at ¶ 62. "To demonstrate prejudice, [Walton] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, quoting *Strickland* at 694.

{¶20} The first issue raised in Walton's assignment of error is whether his trial counsel was ineffective for failing to file a written plea of NGRI on his behalf. However, because Walton also periodically referenced a desire to enter a plea of "temporary insanity," we first address pleading temporary insanity in the context of the ineffective assistance counsel question.

B. Analysis

1. Walton's Counsel is Not Ineffective for Failing to Enter a Temporary Insanity Plea on Walton's Behalf

{¶21} Several Ohio appellate courts, including ours, have held that Ohio "does not recognize the defense of 'temporary insanity.' " *State v. McNichols*, 2020-Ohio-2705, ¶ 12, fn. 2 (4th Dist.).  *See also State v. Charnetzky*, 1983 WL 7380, *4 (5th Dist. 1983); *State v. Isaacs*, 1979 WL 208664, *2 (1st Dist. 1979); *State v. Palmieri*, 46 N.E.2d 318, 324 (7th Dist. 1938).  "[T]he failure to perform a futile act does not support a claim of ineffective assistance of counsel." *State v. Stevens*, 2023-Ohio-3280, ¶ 120 (4th Dist.), citing *State v. Black,* 2013-Ohio-2105, ¶ 37 (4th Dist.).  Therefore, Walton's trial counsel was not ineffective for failing to file a written plea of temporary insanity on Walton's behalf.

### 2. Walton's Counsel was Not Ineffective for Failing to Enter a NGRI Plea on Walton's behalf

{¶22} Walton relies primarily on *State v. Tenace*, 121 Ohio App.3d 702 (6th Dist. 1997) in support of his argument that his trial counsel was ineffective for failing to file a written NGRI plea on his behalf.  In *Tenace*, the defendant was charged with aggravated robbery and aggravated murder.  The appellant therein filed a written NGRI plea.  *Id.* at 707.  An evaluation determined that the appellant was competent to stand trial and he did not meet the criteria to plead NGRI.  *Id.* After the appellant attempted suicide while in jail, he was evaluated for competency again, and again he was found competent to stand trial.  *Id.*  At the second competency hearing, appellant informed the court that he wanted to pursue the NGRI defense even though his attorneys did not believe that was the best strategy.  *Id.*  Appellant continued to protest any decision to withdraw his NGRI plea, even seeking appointment of new counsel.  *Id.* at 707-709. Ultimately, however, appellant's counsel withdrew the NGRI plea, and entered a

not guilty plea on his behalf, which the judge approved. *Id.* at 708. Even after the trial began, the appellant continued to complain about the withdraw of his NGRI plea. *Id.* at 709. The jury found Tenace guilty of aggravated robbery and aggravated murder and he was sentenced to death.[1]

{¶23} On appeal, the appellant in *Tenace* asserted that he "was denied effective assistance of counsel when his trial counsel, against his explicit wishes, withdrew his plea of not guilty by reason of insanity and replaced it with a straight plea of not guilty." *Id.* at 704. In addressing appellant's second assignment of error the court reasoned in part:

> "The entering of any plea to the charges contained in an indictment is a fundamental act reserved to the province of defendant himself. It is always hoped that, after a full and complete discussion of the issues involved—both factual and legal, the defendant considers the historic role of the attorney as counselor and enters that plea not only most protective of his rights but reflective of the posture of the case against him. But in those instances where counsel's advice is rejected, the accused preserves always his right to risk the eventual verdict of court or jury and any punishment inflicted upon him as a result. It is his right to determine the primary question posed to him at arraignment: 'Shall I plead guilty, not guilty (and if the latter plea might raise also the question of my own mental culpability at the time of the commission of the crime with which I am charged) not guilty by reason of insanity?' The professional duty of counsel in this sphere is to present defendant those choices available, to explain their meanings, and then, to abide by his client's choices. Defense counsel cannot decide himself the path to be chosen; he

---

[1] *Tenace*, which involved an aggravated murder conviction with a death penalty specification, was decided prior to the 1996 amendment to the Supreme Court of Ohio's Rules of Practice giving the Supreme Court original jurisdiction over death penalty cases. *See Smith v. Smith*, 1997-Ohio-355, paragraph two of the syllabus ("The courts of appeals shall not accept jurisdiction of any case in which the sentence of death has been imposed for an offense committed on or after January 1, 1995. Appeals in such cases shall be made directly from the trial court to the Supreme Court of Ohio.").

> cannot waive one or more of the defenses once chosen by his client, or withdraw one or more of the pleas entered, without the consent of the person he represents."

*Id.* at 710, quoting *State v. Turner*, Medina App. No. 963 (9th Dist. Sept. 17, 1980), unreported.

Based on this passage and other caselaw, the court concluded

> that once appellant was found competent to stand trial, he was also competent to make a decision regarding what plea to enter. Even if his trial counsel believed that appellant's choice was not the best tactical choice, appellant's decision should have been final. The trial court erred when it allowed appellant's appointed counsel to withdraw the NGRI plea even though appellant objected on the record.  (Footnote omitted)

*Id.* at 715

{¶24} The court in *Tenace* went on to assess whether this error was harmless.  It recognized that while the "psychiatric evidence elicited" from the competency reports will likely not support the appellant's NGRI plea that "does not lessen defendant's right to enter his chosen plea."  *Id*.  "[A] breakdown occurred in the attorney-client relationship of such magnitude that appellant was deprived of the right to effective assistance of counsel.  The trial court erred when it permitted trial counsel to make a decision that is reserved to a competent client: what plea will be entered to the charges brought against the client."  *Id*.

{¶25} We agree with *Tenace* to the extent that entering a plea to a criminal charge "is a fundamental act reserved to the province of defendant himself."  *Id*.  However, our analysis of whether an attorney is ineffective for failing to file a NGRI plea on behalf of their client differs, as we explain infra.

{¶26} "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14). "Where facts and circumstances indicate that a NGRI plea would have had a reasonable probability of success, it is ineffective assistance of counsel to fail to enter the plea." (Citation omitted.) *State v. Walker*, 2023-Ohio-140, ¶ 30 (6th Dist.), citing *State v. Anaya*, 2008-Ohio-1853, ¶ 29 (6th Dist.). However, where "there is evidence that [the accused] understood the wrongfulness of his actions, * * * [the defendant] cannot show that his counsel was deficient for failing to enter an NGRI plea." *Id.* at ¶ 34, citing *State v. Martinez,* 2015-Ohio-1293, ¶ 22 (8th Dist.).

{¶27} Further, where "there is no evidence in the record * * * that, if counsel had pursued a NGRI plea, that he would have been found not guilty[,]" then the accused cannot show prejudice. *Id.* at ¶ 35. To demonstrate prejudice, Walton must show that there was a reasonable probability that, but for his counsel's failure to file a written NGRI plea on Walton's behalf, he would have been found NGRI of harassment with a bodily substance in violation of R.C. 2921.38(A). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694 (1984).

{¶28} In this case, Lora N. Davis, Psy.D., Forensic Psychologist, of the Court Clinic evaluated Walton to determine if he was competent to stand trial and

whether he was sane at the time of the offense. Regarding his sanity, she opined that "Mr. Walton demonstrated that he knows the wrongfulness of his actions and that is documented through his mental health records and conduct reports." She reported that Walton "continued to claim that staff was responsible for his behavior because they 'were not attending his needs.' Therefore, it is believed that he knew the wrongfulness of his actions at the time, as impulsivity is not a valid reason for engaging in behavior that is harmful to others." Dr. Davis ultimately concluded, within a reasonable degree of psychological certainty, that Walton "Does not meet criteria for the N.G.R.I. plea."

{¶29} Dr. Davis' opinion was corroborated by Walton's testimony at trial. Walton admitted on cross examination to throwing a bodily substance on the guard because he had no water for "three weeks, and they were refusing me food." He stated "I was using the restroom and that's the only thing that I could use to throw on *to show retaliation* to say, hey, man, stop abusing me." (Emphasis added.)

{¶30} Additionally, at the competency hearing, the trial court found that neither Dr. Davis' opinion, nor Walton's version of the facts supported Walton pleading NGRI. The trial court further elaborated on the final trial date, during preliminary discussions, that Walton's statements made during his evaluation "[w]ould not seem to support that kind of plea at all[.]"

{¶31} Thus, after our thorough review of the record, nothing establishes that Walton was unable to understand the difference between right and wrong at the time of his offense committed herein. Therefore, even if counsel had filed a

NGRI plea on Walton's behalf, the evidence indicates that there is no reasonable probability that the result of the proceeding would have been different. Consequently, Walton has failed to show he was prejudiced by his counsel's failure to file a NGRI plea. *Walker*, 2023-Ohio-140, ¶ 30 (6th Dist.).

{¶32} Accordingly, we find Walton's counsel was not ineffective for failing to enter a NGRI plea on his behalf.

## II. Waiver of Court Costs

{¶33} Walton also argues that his counsel was ineffective for failing to request a waiver of court costs that the trial court imposed at sentencing.

{¶34} Walton admits that the trial court had a duty to order Walton to pay the court costs in his case, but also asserts that it has discretion to waive those costs. In deciding whether to waive such costs, a court may consider the defendant's ability to pay the costs assessed. In determining whether counsel is ineffective for failing to request a waiver of costs, the decision depends upon whether the facts presented by the defendant establish a reasonable probability that the trial court would have waived costs if a waiver motion had been filed.

{¶35} Walton asserts that the court's imposition of court costs substantially affected his rights, including his due process rights. Walton claims that the court ordered the Ohio Department of Rehabilitation and Corrections to withhold funds from his commissary account while incarcerated despite its earlier finding that he was indigent. Therefore, the record shows that there is a probability that had his counsel filed a motion to waive costs, it would have been granted.

{¶36} Walton also argues that upon release from prison he will be unemployable because of his mental health conditions. In support, he cites to his testimony from the trial. His counsel asked him: "Okay. And – now, since you were in the – suicide cell, were you on the – were you being treated for any mental health issues at that time?" Walton responded: "I'm on the mental health caseload. I've been on the mental case basically all my life[.]"

{¶37} In response, the State claims that the trial court must impose costs, but the trial court maintains the authority to waive them after sentencing. Given the possibility of future waiver, Walton's argument that he is prejudiced is mere speculation.

{¶38} Additionally, the State argues that because the Lucas County trial court did not waive the costs of prosecution in two of the three sentences that Walton was currently serving, the trial court here would be unlikely to waive costs even if a motion had been filed.

{¶39} Finally, the State asserts that the timing of a motion to seek waiver of costs is a matter of trial strategy. The State asserts that Walton has not proven that counsel's failure to file a motion to waive costs was not a matter of trial strategy.

A. Standard of Review

{¶40} The Supreme Court of Ohio has addressed what a defendant must prove in order to be successful on an ineffective assistance of counsel claim for failing to seek a waiver of costs. *State v. Davis*, 2020-Ohio-309. In large part, "[t]he court did not alter the basic two-part-ineffective-assistance-of-counsel test *

* * which originated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052,

80 L. Ed. 2d 674 (1984)." *State v. Rister*, 2023-Ohio-1284, ¶ 23, citing *Davis* at ¶

10. As we stated supra, *Strickland* requires a defendant to show that (1)

counsel's performance was deficient, and (2) counsel's deficient performance

prejudiced the defense. *Strickland* at 687-688.

> However, [*Davis*] imparted instruction regarding the second prong of the test, i.e., whether counsel's conduct in failing to request a court to waive costs prejudiced the defendant. Specifically, the Court stated:
> To evaluate whether a defendant has been prejudiced, as part of an ineffective-assistance-of-counsel claim, a court does not assess whether the defendant was simply harmed by counsel's alleged deficient performance. More specifically, the court does not analyze whether the defendant has been required to pay court costs at a given moment, or even whether the defendant has the ability to have court costs waived in the future. Furthermore, a determination of indigency alone does not rise to the level of creating a reasonable probability that the trial court would have waived costs had defense counsel moved the court to do so[.] * * * The court of appeals, instead, must look at all the circumstances that the defendant sets forth in attempting to demonstrate prejudice and determine whether there is a reasonable probability that the trial court would have granted a motion to waive costs had one been made." (Citations omitted.)

*Id.*

{¶41} In *Rister,* we further recognized that " 'if a court finds that a

defendant has the ability to work and pay court costs in the future, the court may

decide to *not* waive court costs.' " (Emphasis in original.) *Id.* at ¶ 24, citing *State*

*v. Smith*, 2021-Ohio-2866, ¶ 80 (4th Dist.). "Also relevant to the determination of

whether a court might waive costs is whether 'the record contains no indication

that appellant "would be unemployable upon his release, such as a health or

medical condition that would preclude him from future employment." ' " *Id.* at ¶

24, quoting *State v. Malone*, 2022-Ohio-1409, ¶ 33 (4th Dist.), quoting *State v. Freeman*, 2018-Ohio-4973, ¶ 13 (1st Dist.).

### B. Analysis

{¶42} Walton has the burden of proving his counsel was ineffective for failing to seek waiver of the costs imposed by the trial court.  One of Walton's arguments is that "the court ordered the Ohio Department of Rehabilitations and Corrections to withhold funds from his commissary account while incarcerated to pay for the costs, despite earlier finding that he is indigent."  As established in *Davis,* the fact that Walton was indigent alone is not sufficient to prove prejudice. Further, the record demonstrates that the trial court was aware of Walton's financial situation, including that Walton was indigent, requiring the appointment of counsel, and that Walton was incarcerated on other offenses, and not employed, when it ordered the costs to be withheld from his commissary account.  And with that information at hand, the trial court imposed court costs. Therefore, we find that there is no reasonable probability that the court would have waived Walton's costs if counsel had requested it to do so.

{¶43} Walton also argues that his counsel was ineffective for not seeking a waiver of his costs because he is unemployable due to mental illness. The only evidence Walton provides in support of this argument is his testimony that he has been "on the mental health caseload at [the Ohio Department of Rehabilitation and Corrections] 'basically [his] whole life.' "  His discussions with the court during this case seem to have been reasonable and responsive.  He testified that he takes no medication.  He has offered no expert testimony that he suffers from

mental illness to a degree that would render him unemployable. In sum, Walton has offered no evidence that his mental health issues would preclude him from obtaining a job. And when Walton is released from prison, if mental illness in fact prevents him from acquiring a job, the trial court can waive his costs at that time. *See* R.C. 2947.23(C). Thus, we find that there is no reasonable probability that the court would have waived Walton's costs had his counsel argued that Walton's mental illness would have precluded him from future employment.

{¶44} Therefore, we find Walton's trial counsel was ineffective for failing to seek waiver of his costs.

CONCLUSION

{¶45} Having failed to demonstrate that his counsel was ineffective, we overrule Walton's sole assignment of error. Accordingly, we affirm the trial court's judgment entry of conviction.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY


It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the SCIOTO COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

For the Court,


BY: _____
Kristy S. Wilkin, Judge



**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**